HENRY H. ISHAM, as Trustee, etc., Respondent, v. MARY E. Post, as Administratrix, etc., Appellant.

P., defendant's testator, was a private banker in New York city; by circulars he advertised himself as dealing in " choice stocks," and promised his customers " careful attention " in all their financial transactions. Plaintiff employed P. to loan for him $25,000, which the latter agreed to do gratuitously; he loaned the money, taking as collateral certain certificates of corporate stock, which had by a forgery been raised so as to represent a larger number of shares than they were issued for, and in consequence a loss resulted. In an action to recover damages, *held,* that the fact that the services of P. were rendered gratuitously did not free him from the obligation to exercise such diligence as he had promised to those dealing with him, nor was he at liberty to withhold from his agency the exercise of the skill and knowledge he held himself out to possess, and so, if the loss resulted from failure to exercise ordinary skill and knowledge, he was liable.

Plaintiff proved the delivery to P. of the amount specified, to be loaned and returned on demand, and that the latter refused to return the same on proper demand. *Held,* that the burden was upon defendant of proving affirmatively that P. did his duty fully and faithfully and without negligence or misconduct, and so that the loss was without his fault.

It appeared that the loan was made to a firm in good repute and standing at the time; that the original certificates were genuine and lawful, and had been issued six years previously to a member of the firm, who had executed the usual blank assignments enabling them to pass from hand to hand, and were attested by his firm. The loan was made by P.'s managing clerk, who had had an extensive experience in such transactions, and had handled many of the certificates of the company whose stock was taken as collateral. The clerk took the certificates without close or careful scrutiny. The trial court found that P. was negligent in making the loan upon the security of the certificates, on the ground that he took them without examination, without presenting them for verification at the office of issue or registry and without inquiry as to the solvency of the borrowing firm. *Held,* that the care P. was bound to exercise did not require him to make inquiries or present the certificates for verification, but as to the omission to give the certificates a proper examination the finding could not be held error as matter of law.

Defendant offered to show that P. lent $50,000 of his own money, accepting as collateral similarly raised certificates; also that the certificates in question had been given and received on the street as collateral for loans, and deceived the skill of a great number of bankers and brokers who took and held them without suspicion. This testimony

was objected to and excluded.  *Held*, error, as the proof, if made, would have shown good faith on defendant's part and would have excused and justified the failure to discover the forgery.
*Isham* v. *Post* (71 Hun, 184), reversed.

(Argued December 21, 1893 ; decided  January 23, 1894.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made July 28, 1893, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was brought by plaintiff, as trustee, to recover of Augustus T. Post the sum of $25,000 alleged to have been placed in his hands to be loaned for plaintiff and to be returned on demand.   After the death of Post the action was revived and continued against his administratrix.

The facts, so far as material, are set forth in the opinion.

*Alfred Ely* for appellant.   Mr. Post acted only as Mr. Isham's agent in the whole matter of loaning the $25,000 referred to in the complaint, and in all that he did Mr. Post acted within the scope and intention of his employment as agent.   (*Lambert* v. *Heath*, 15  M. & W. 484 ; *Peckham* v. *Ketchum*, 5 Bosw. 506.)   The $25,000 delivered by Isham to Post was not chargeable with any trust in Mr. Post's hands. (*Atty.-Gen.* v. *L. Ins. Co.*, 71 N. Y. 325 ; *Risley* v. *P. Bank*, 83 id. 324 ; *O'Connor* v. *M. Bank*, 124 id. 331 ; *Gerard* v. *McCormick*, 130 id. 267 ; *Duncan* v. *Jordan*, 15 Wall. 255 ; *Shaw* v. *Spencer*, 100 Mass. 382 ; *M. N. Bank* v. *Hall*, 83 N. Y. 338.)   Mr. Post was responsible in any event only for ordinary care and liable only for gross negligence.   (Story on Bail. §§ 179, 180–183 ; *Shiels* v. *Blackburne*, 1 H. Black. 158 ; *Beardsley* v. *Richardson*, 11 Wend. 25 ; *Tompkins* v. *Saltmarsh*, 14 S. & R. 275 ; *Finnucane* v. *Small*, 1 Esp. 315 ; *Foster* v. *E. C. Bank*, 17 Mass. 478.)   The exercise of ordinary care did not require Mr. Post to verify these certificates at the office of the company.   (*Lamb* v. *C. & A. R. R. Co.*, 46 N. Y. 279 ; *Leitch* v. *Wells*, 48 id. 585 ; *N. Y. & N. H.*

*R. R.* v. *Schuyler,* 34 id. 30; *McNeil* v. *Bank,* 46 id. 325; *F. A. Bank* v. *R. R. Co.,* 137 id. 231; *Bank* v. *Lanier,* 11 Wall. 377.) The acceptance of the certificates in question as collateral for Mr. Isham's loan was not negligence on Mr. Post's part. (*White* v. *C. Bank,* 64 N. Y. 316.) Any presumption of negligence on the part of Mr. Post is rebutted by the fact that he treated Isham's money in the same way as he did his own. (Jones on Bail. 63; Story on Bail. § 183; *Shiels* v. *Blackburne,* 1 H. Black. 159, 1789; *Finnucane* v. *Small,* 1 Esp. 315, 1794; *Foster* v. *E. C. Bank,* 17 Mass. 478.) Mr. Post is not liable because he expressly exempted himself from liability by specific agreement to that effect with Mr. Isham at the time he undertook the loan. (Story on Bail. [9th ed.] 166; *Loeb* v. *Hellman,* 83 N. Y. 601; *Bell* v. *Dagg,* 60 id. 530.) Of the seven certificates four were genuine in every respect, and the forgery in the other three was not apparent. It had escaped detection for years. Moreover, the forgery was not of any signature, but was an alteration of the body of the instrument, after it had been issued, which Mr. Post was neither expected nor bound to discover. (*Bank of Commerce* v. *U. Bank,* 3 N. Y. 230; *White* v. *C. Bank,* 64 id. 316.) Mr. Post, as a gratuitous bailee, was not a guarantor. He had, in addition, expressly stipulated to the contrary. (*Bell* v. *Dagg,* 60 N. Y. 530.)

*Frederic A. Ward* for respondent. The rule is well settled and inflexible that in all dealings in negotiable securities there is an implied warranty on the part of the one proffering them, whoever he may be, as a part of the agreement, that such securities are genuine and not forged. (*Delaware Bank* v. *Davis,* 20 N. Y. 228, 229; *Littauer* v. *Goldman,* 72 id. 506; *Webb* v. *Odell,* 49 id. 583; *M. N. Bank* v. *Gallaudet,* 120 id. 303; *Goddard* v. *M. Bank,* 4 id. 147–152; *Welsh* v. *G. A. Bank,* 73 id. 424–426; *Weisser* v. *Dennison,* 10 id. 75; *N. P. Bank* v. *N. N. Bank,* 46 id. 77–80; *Turnbull* v. *Bowyer,* 40 id. 450–460; *Otis* v. *Cullum,* 2 Otto, 447; *Osborn* v. *Nicholson,* 13 Wall. 654.) If the transaction be

viewed as a loan made by Post for the account of the plaintiff
as principal, the same rule applies.    Moreover, so long as Mr.
Post conducted the transaction in his own name, without giv-
ing up or disclosing his principal, or securing his adoption of
the loan, he made himself debtor to the trust estate and took
the risks of the transaction.    (*Morrison* v. *Currie*, 4 Duer,
79; *Holt* v. *Ross*, 54 N. Y. 478; *Bank of Commerce* v. *U.
Bank*, 3 id. 230; *K. Bank* v. *Eltings*, 40 id. 391, 396;
*Frank* v. *Lanier*, 91 id. 112; *G. Bank* v. *S. Bank*, 17 Mass.
33, 41; *U. S. Bank* v. *Bank of Georgia*, 10 Wheat. 351.)
Upon defendant's claim that Mr. Post's only liability was for
negligence in the course of his agency, the plaintiff's case is
made out unanswerably by the proofs.    ( *Whitney* v. *Martine*,
88 N. Y. 535; *G. Bank* v. *S. Bank*, 17 Mass. 33; *Bank of
Commerce* v. *U. Bank*, 3 N. Y. 236; *Gerard* v. *McCormick*,
130 id. 267; *Shaw* v. *Spencer*, 100 Mass. 382; *Gibson* v. *N.
P. Bank*, 98 N. Y. 94; *Fellows* v. *Longyor*, 91 id. 324.)
Upon the notice imparted by the check and the two accounts
kept by defendant, one with plaintiff individually and one
with him as trustee, defendant's intestate was chargeable with
knowledge that he had absolutely no right to loan these trust
moneys upon such securities as he accepted without the writ-
ten consent of the *cestuis que trust*, and that he did so at
his peril.    (*Gerard* v. *McCormick*, 130 N. Y. 267, 268;
*Sturtevant* v. *Jacques*, 14 Allen, 523; *Shaw* v. *Spencer*,
100 Mass. 382; *Budd* v. *Munroe*, 18 Hun, 316; *Brew-
ster* v. *Lime*, 42 Cal. 139; *Thompson* v. *Toland*, 48 id. 99.)
The judgment appealed from must be sustained for the reason,
not adopted by the court, but fully sustained by the conceded
and undisputable facts of the case (some of which have been
found and some not), that the loan in question was not a law-
ful use or investment of trust moneys, but a wrongful and
illegal use thereof on the part of Augustus T. Post.    (*Gerard*
v. *McCormick*, 130 N. Y. 267; *C. Bank* v. *Delano*, 48 id.
340; *Williamson* v. *Brown*, 15 id. 354; *Baker* v. *Bliss*, 39
id. 70; *Bridgman* v. *Gill*, 24 Beav. 302, 306; *Fellows* v.
*Longyor*, 91 N. Y. 331; *Budd* v. *Munroe*, 18 Hun, 316, 318;

*Holden* v. *N. Y. & E. Bank*, 72 N. Y. 294; *Boddenham* v. *Hoskins*, 2 De G., M. & G. 903; *Foxton* v. *M. Bank*, 44 L. R. L. S. 406–408; *Atty.-Gen.* v. *Leicester*, 7 Beav. 176, 180; *Deobold* v. *Oppermann*, 111 N. Y. 538.) The claim of the defense that the transaction in question was a gratuitous bailment and that, as gratuitous bailee, defendant's intestate was only liable for gross negligence, cannot be sustained either as matter of law or as matter of fact. (*Andrews* v. *Richmond*, 34 Hun, 16–23; *Mallory* v. *Willis*, 4 N. Y. 76; *Foster* v. *Pettibone*, 7 id. 433; *Doorman* v. *Jenkins*, 2 Ad. & El. 256; *Deobold* v. *Oppermann*, 111 N. Y. 532.) None of the exceptions were well taken. All of the rejected testimony was immaterial in any view of the case and especially in view of the decision made. (*Hun* v. *Carey*, 88 N. Y. 66; *Hopper* v. *Sage*, 112 id. 530; *Watts* v. *Bailey*, 49 id. 464, 472; *Harris* v. *Tumbridge*, 83 id. 92; *Gerard* v. *McCormick*, 130 id. 267; *Shaw* v. *Spencer*, 100 Mass. 382.) The complaint in the suit was properly dismissed, and it is only in the view of defendant's liability that its discussion is of any importance. (*Sherman* v. *Wright*, 49 N. Y. 227, 231; *Fellows* v. *Longyor*, 91 id. 324, 330; 2 Perry on Trusts, §§ 811, 843; *Kowing* v. *Manly*, 49 N. Y. 202; *Deobold* v. *Oppermann*, 111 id. 538; Code Civ. Pro. § 449; *Donnelly* v. *West*, 17 Hun, 568; *W. R. R. Co.* v. *Nolan*, 48 N. Y. 513; *Holden* v. *N. Y. & S. Bank*, 72 id. 297.)

*Clarence D. Ashley* for *cestuis qui trustent*, respondents. Post had notice that Isham was a trustee using trust funds, and was bound to ascertain what the trust was at his peril. (*Fellows* v. *Longyor*, 91 N. Y. 324; *Shaw* v. *Spencer*, 100 Mass. 382; *F. N. Bank* v. *Lange*, 21 Md. 138.)

FINCH, J. The relation between the parties to this controversy must be regarded as that of principal and agent. Post was a banker; not a member of the Stock Exchange and so bound by its rules, but familiar with its customs and usages and controlled by them to some extent whenever dealing with stocks in the Wall street market. He held himself out to

the business world in that character. By his circulars he advertised himself as dealing in "choice stocks" and promised his customers "careful attention" in all their financial transactions. Those who dealt with him contracted for and had a right to expect a degree of care commensurate with the importance and the risks of the business to be done, and a skill and capacity adequate to its performance. That care and skill is such as should characterize a banker operating for others in a financial center, and different in kind from the ordinary diligence and capacity of the ordinary citizen. The banker is employed exactly for that reason. Without it there might cease to be motives for employing him at all.

Isham was the trustee of an express trust, but in this dispute must be regarded simply as an individual, and without reference to his trust character. For the trial court has found as a fact that, in employing the banker to loan for him twenty-five thousand dollars, he gave no notice of the trust character attaching to the money, contracted apparently for himself, and left Post to believe and be justified in believing that the money was his own. The evidence on the subject admits of some difference of opinion, but on this appeal the finding must control.

In the same way the question whether Post's services in making the loan were or were not to be gratuitous must be deemed settled. The finding is that those services were to be without compensation; and on that ground the appellant claims that Post was a gratuitous mandatary and liable only for gross negligence. But, while no compensation as such was to be paid, it does not follow that the banker was freed from the obligation of such diligence as he had promised to those who dealt with him, or was at liberty to withhold from his agency the exercise of the skill and knowledge which he held himself out to possess. Nothing in general is more unsatisfactory than attempts to define and formulate the different degrees of negligence, but even where the neglect which charges the mandatary is described as "gross," it is still true that if his situation or employment implies ordinary skill or

knowledge adequate to the undertaking, he will be responsible for any losses or injuries resulting from the want of the exercise of such skill or knowledge. (Story on Bailments, § 182 *a ;* *Shiells* v. *Blackburne*, 1 H. Black. 158 ; *Foster* v. *Essex Bank*, 17 Mass. 479 ; *First Nat. Bank* v. *Ocean Nat. Bank*, 60 N. Y. 295.) In the latter case it was said that ordinary care as well as gross negligence, the one being in contrast with the other, must be graded by the nature and value of the property and the risks to which it is exposed. Post, therefore, was required to exercise the skill and knowledge of a banker engaged in loaning money for himself and for his customers, because of the peculiar character and scope of his agency, because of his promise of careful attention, and because the contract was made in reliance upon his business character and skill.

We should next consider upon whom rested the burden of proof. The plaintiff alleged and proved that he put into Post's hands, as his banker and agent, to be loaned upon demand at the high rates of interest prevailing and in the mode approved by custom and usage, the sum of twenty-five thousand dollars, which sum Post had not returned, but refused to return upon proper demand, and so had converted the same to his own use. That made out plaintiff's case. Judgment for him must necessarily follow, unless Post in answer has established an affirmative defense. That which he pleaded and sought to prove was that the money was lost without his fault and through an event for which he was altogether blameless. In other words, he was bound to show that he did his duty fully and faithfully and without negligence or misconduct, so that the resultant loss was not his, but must justly fall upon the plaintiff. (*Marvin* v. *Brooks*, 94 N. Y. 75 ; *Ouderkirk* v. *C. N. Bank*, 119 id. 267.) With that burden resting upon him, we must examine his defense and the evidence given in its support, and determine whether or not it is our duty to sustain the adverse conclusion, to reverse which he brings this appeal.

The trial court has found that Post was negligent in making

the loan upon the security of the certificates of stock taken as collateral, which had been raised by a forgery to indicate a larger number of shares than was the actual truth. Negligence is usually a mixed question of law and fact, and is never purely one of law unless the facts are wholly undisputed and admit of no conflicting inferences. (*Filer* v. *N. Y. C. R. R. Co.,* 49 N. Y. 47.) In the face of the finding referred to we cannot reverse this judgment unless it clearly appears that upon no possible view of the facts, and upon no inferences deducible from them, can proof of negligence be found, or unless, in reaching the result, some material error in the admission or exclusion of evidence has affected the judgment rendered.

The finding of negligence, by its terms, rests upon three omissions. The admitted cause of the loss was a forgery of the number of shares of the stock given as collateral on the loan by raising that number in one certificate from seven shares to seventy, in another from eight to eighty and in a third from three to ninety-three. The certificates were the genuine and lawful certificates of the company when issued, signed and attested by the proper officers, and defective only in the forgery which raised the number of the shares. The loan was made to Mills, Robeson & Smith, who were in good repute and standing at the time, but failed two days later for a very large amount. The trial court asserted Post's liability upon the ground that he took the certificates without examination, without presenting them for verification at the office of issue or of registry, and without inquiry as to the solvency of the borrowing firm.

Assuming, as the court held, and as the facts of the agency appear to justify, that Post was bound to exercise in making the loan ordinary care, such as belonged to his business as a banker and to the duty he attempted to perform, we must consider the alleged omissions upon the facts disclosed in the record. In so doing we may dismiss the claim of negligence as inferred from the omission to inquire as to the solvency of the borrowers. There is no proof that inquiry would or could have developed any different information from that which

Post already had. There is no hint of any unfavorable rumors preceding the failure, or of any doubt in any quarter of the solvency of the borrowing firm; but, on the contrary, the undisputed evidence is that they were reputed to be solvent and responsible when the loan was made. There is no indication that inquiry would have yielded to Post any different information from that which he already possessed, or would have furnished the slightest reason for refusing the loan. There was certainly no negligence in omitting a new and further inquiry.

Nor do I think that ordinary care required Post, before accepting the certificates, to have presented them for verification, if there was nothing on their face calculated to arouse suspicion. They had been issued, as appears by their dates, more than six years before the loan was made, but had been issued directly to Smith, who was one of the borrowing firm, and of course knew that they were genuine when the stock was transferred to him on the company's books. He had executed the usual blank assignment which enabled them to pass from hand to hand, and which had been attested by his firm, and no suspicion could attach to them except upon a doubt of Smith's integrity, which no known fact warranted. There is no proof that it was ever a habit or custom for bankers or brokers to present such certificates for verification, and it is quite obvious that the business methods of Wall street do not admit of such a custom, suggest no necessity for its existence, and would be badly hindered and hampered by such a regulation; so that I am of opinion that, in ordinary cases, and at least where the official signatures are genuine, and nothing in the body of the certificates reasonably awakens suspicion, it is not evidence of negligence that the stock was taken as collateral without verification at the company's office. Where there is nothing in the surrounding facts or on the face of the paper to create a doubt it would be an instance of great and extraordinary care to present them for verification, and much beyond the degree of diligence required of Post in the present case.

There remains only the alleged omission to give the certifi-cates a reasonable examination. I am inclined to regard that question as sufficiently debatable to prevent our treating it wholly as a question of law. And that is true partly because of some serious conflict in the testimony, but mainly because of the inherent character of the inquiry, which is much more one of fact than of law. The evidence fairly indicates that Post personally never saw the certificates when the loan was. made. In all his correspondence with Isham and when stand-ing on his defense he made no such claim, but himself said he trusted too much to his clerks. Isham in one of his letters reminds Post of his having made that remark, and the latter does not dispute it. And as matter of fact the loan was negotiated and consummated by his managing clerk, Shephard, who was fully examined as a witness, and did not. claim or pretend that he showed the certificates to Post at all. But Shephard was not incompetent. Enough appears in the evidence to indicate that he possessed the necessary skill and knowledge to properly perform the duty assigned to him. He held a responsible position in Post's office, had an extensive and valuable experience, succeeded to Post's business on his death, and testifies that he was familiar with and had handled very many of the certificates of the company whose stock was taken as collateral. We are not justified in saying that he did not examine the forged certificates at all, and the find-ing of the trial court cannot mean that. What it must mean in view of the facts is that he gave them no close and careful scrutiny. He does not pretend that he did. He says only that they were brought to him by the messenger of the bor-rower, and that he took them and gave Post's check in exchange. Undoubtedly he recognized the familiar signa-tures and noted the number of shares represented : but there was nothing like careful scrutiny or examination, but unhesi-tating trust in the honesty of the borrowers. I cannot say, as matter of law, that such was the full measure of his duty, and that he did not hastily withhold more or less of the very skill and knowledge upon which Isham relied in selecting Post to

loan for him the money. The answer made would be sufficient if it had been proved. That answer is that the forgery was so skillfully and deftly executed that no ordinary skill, exercised upon a reasonable examination, would have disclosed the fraud or even aroused suspicion. But we do not know that. The certificates themselves were before the trial judge, and what inference he drew from their inspection we cannot · say. What we do know is that one of them, raised from three to ninety-three, was so skillfully changed that when Shephard and Isham examined it critically, after knowledge of the forgery, the latter thought it genuine. What Shephard thought he did not tell us, and omitted to say that what would have deceived the inexperience of Isham would also have deceived him.

But at this stage of the case the defendant realized the necessity of proof that the forgery was deft enough to deceive the skill and knowledge of any ordinary banker dealing in such securities. As I look at it the point had become vital to the defense. If a fair and reasonable examination of the papers, in the room of a hurried and momentary glance would have disclosed the fraud to the skilled eye of an experienced banker, or awakened a suspicion which would have led to a verification, then I think a finding of negligence would be justified. But if, on the contrary, the forgery was such as to deceive any reasonable scrutiny of a fairly prudent banker, knowing the signatures, but not suspecting fraud in the body of the instruments, then scrutiny would have done no good and the deception suffered would be excusable. Just that the defendant sought to prove in two ways. He offered to show, first, that he himself had loaned fifty thousand dollars of his own money to the same borrowers, accepting in part similar raised collateral; and, second, that for several years the same identical raised certificates had been given and received on the street as collateral for loans, and deceived the skill and care of a great number of bankers and brokers, who took and held them without suspicion. Both offers of proof were refused and the evidence excluded. I think that was error. The proof would

have shown, at least, the character of the forgery, and that Shephard was not in fault for not discovering it. It would have established Post's absolute good faith in the transaction and that he took the same care of Isham's money as of his own. Of course is was not admissible to show merely that some others were no more prudent than Post, or that his own fault was less because they did the same, but it was admissible to prove that Shephard was deceived by a forgery so perfect and skillful that it escaped for years the vigilance of the street. With that fact in the case added to what already appears, I should deem the defense sufficiently established. It was objected to this offered evidence that it might involve an examination of each separate transaction with others. That was not proposed or necessary. The witness testifying was Watson. He had been the clerk of Mills, Robinson & Smith for eleven years and had charge of all their loan business. The offer was to prove by him that for years these raised certificates had been used on the street as collateral for loans without a suspicion on his part, and baffling the skill and knowledge of banks, brokers and business firms of experience and reputation. It seems to me, if that is the truth, that no fact could more conclusively establish the perfection of the forgery and more completely excuse and justify the failure of Shephard to discover it. What was permitted to be proved makes the existence of such a fact quite probable. The certificate raised from three to ninety-three was well enough done to have deceived Isham, and, as to the others, it was much easier to change seven to seventy and eight to eighty without attracting notice. If this occurrence has disclosed a new danger in the business methods of the stock market, it may serve at least as a warning, and tend to make more deliberate inspection and closer scrutiny an ordinary duty.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur, except BARTLETT, J., not sitting.

Judgment reversed.