BANK OF BAY BISCAYNE v. MONONGAHELA NAT. BANK.

(Circuit Court, W. D. Pennsylvania. December 19, 1903.)

No. 15.

1. BANKS AND BANKING — COLLECTION OF DRAFTS — MEASURE OF DUTY — ORDINARY CARE.

Where drafts are sent from one bank to another for collection and remittance, the measure of duty of the collecting bank is the exercise of ordinary care and reasonable diligence.

2. SAME—EVIDENCE.

Plaintiff mailed to defendant bank for collection on July 1st two drafts, amounting to $1,425.50, on S. Bros. Co., who were in good credit. On July 3d three more drafts, aggregating $1,622.41, and on July 5th other drafts amounting to $2,757.85, were drawn on the same company. The drafts were received by defendant, respectively, on July 5th, 7th, and 9th, with directions to collect and remit without protest. The drafts were presented on the days they were received, and the drawees on each occasion stated that they would pay the drafts as soon as they could verify the amounts from the invoices for which the drafts had been drawn, and requested that the drafts be held until such verification could be made. On July 9th plaintiff requested defendant to inform it whether the drafts had been paid, and on the same day defendant answered by telegram that one of the drafts had been paid that day, and that the others would be paid in a few days. On July 10th plaintiff telegraphed defendant to return the drafts if not paid that day, which was accordingly done. Before July 9th plaintiff had permitted the drawers to overdraw their account $3,000, and, after receiving the telegram of July 9th, permitted a further overdraft of $2,000; and, by reason of the nonpayment of the drafts, plaintiff lost by such overdraft an amount not exceeding $2,000. *Held*, that plaintiff's loss was not chargeable to defendant's alleged negligence in failing to promptly return the drafts after presentation and nonpayment.

Sur Motion on the Part of the Plaintiff for a New Trial.

John B. Chapman, for plaintiff.
R. A. & James Balph, for defendant.

ACHESON, Circuit Judge. The plaintiff, the Bank of Bay Biscayne, located at Miami, Fla., received for collection from Charles Courley & Co. nine sight drafts drawn by that firm upon Somers Bros. Company, of Pittsburgh, payable to the order of plaintiff bank. The drawers were shipping fruit from Florida to Somers Bros. Company, at Pittsburgh, and these drafts were drawn on account of such shipments. The plaintiff bank sent these drafts for collection to the

¶ 1. See Banks and Banking, vol. 6, Cent. Dig. § 598.

defendant, the Monongahela National Bank, located at Pittsburgh. The first two of the drafts, which together amounted to $1,425.50, were mailed on July 1st, and were received by the defendant on July 5th; the next three, which together amounted to $1,622.41, were mailed on July 3d, and were received by the defendant on July 7th; and the other drafts, amounting to $2,757.85, were mailed on July 5th, and were received by the defendant on July 9th. The several letters from the plaintiff to the defendant transmitting these drafts stated that they were sent "for collection and remittance," with the added direction, "No protest." On July 5th, the date on which the first of these drafts were received, they were presented by the defendant to Somers Bros. Company, and the drafts which were received on the 7th of July were presented on that day by the defendant to the drawees. On each of these occasions Somers Bros. Company stated they would pay the drafts as soon as they could verify the correctness of the amounts thereof by the invoices for the fruit, and requested that the drafts be held until that verification could be made. The drafts received on the 9th of July were duly presented by the defendant to the drawees. On July 9th the plaintiff sent a telegram to the defendant, inquiring whether the drafts had been paid. The defendant immediately telegraphed to the plaintiff the following answer: "Draft four forty-three paid to-day    Will pay others in a few days." This telegram was received by the plaintiff on the day it was sent, July 9th. On the next day, July 10th, the plaintiff telegraphed to the defendant to return the drafts if not paid that day, and accordingly this was done. Before July 9th the plaintiff bank had permitted Charles Courley & Co. to overdraw their account with that bank $3,000, and, after the telegram from the defendant of July 9th had been received by the plaintiff bank, it permitted Charles Courley & Co. to further overdraw their account $2,000.

This action was brought to recover damages for the loss the plaintiff had sustained in consequence of these overdrafts; the plaintiff alleging that the overdrafts were permitted because of the defendant's negligence in holding the drafts, and not communicating with the plaintiff sooner. The court submitted to the jury the question of the defendant's alleged negligence, with instructions that the measure of defendant's duty as collecting agent was ordinary care and reasonable diligence. The authorities fully sustain this instruction. 3 Amer. & Eng. Ency. of Law, 805; National Bank v. Merchants' Bank, 91 U. S. 92, 104, 23 L. Ed. 208, 213. In this latter case Mr. Justice Strong, speaking for the court, said:

"In the case in hand, the Bank of Commerce, having accepted the agency to collect, was bound only to reasonable care and diligence in the discharge of its assumed duties. Warren v. Suffolk Bank, 10 Cush. 582. In a case of doubt, its best judgment was all the principal had a right to require. If the absence of specific instructions left it uncertain what was to be done, further than to procure acceptance of the drafts and to receive payment when they fell due, it was the fault of the principal. If the consequence was a loss, it would be most unjust to cast the loss on the agent."

In the present instance the drafts were sent "for collection and remittance," and the plaintiff gave no specific instructions, except not

to protest. The drawees did not refuse to pay, but, on the contrary, stated that they would pay the drafts as soon as they could verify the correctness of the amounts by the invoices. The drawees were in good business standing. In the exercise of its best judgment, and acting as it believed for the best interest of the plaintiff, the defendant held the drafts a few days, believing that they would be paid. As the defendant was instructed not to protest, it was not thought necessary to report to the plaintiff at once. The evidence, I think, abundantly warranted the jury in acquitting the defendant of negligence.

Even if the court was technically wrong in stating that the drafts were not dishonored by what occurred on July 5th and 7th, when they were presented to the drawees, the error was harmless. The defendant had no knowledge, nor any reason to suspect, that the plaintiff was permitting or would permit Charles Courley & Co. to overdraw their account. The evidence showed that, if the defendant on the evening of July 5th had mailed to the plaintiff a letter of information, it would not have reached the plaintiff until July 9th. Now, on that very day the above-mentioned telegrams passed between the two banks, and the plaintiff was fully advised as to the situation. Therefore no harm ensued for want of a letter. Moreover, before July 9th the plaintiff had permitted Charles Courley & Co. to overdraw their account $3,000, and after it was informed of the facts the plaintiff permitted a further overdraft of $2,000. According to my recollection of the evidence, the plaintiff's ultimate loss did not exceed $2,000. So that the plaintiff sustained no loss that, upon any proper view of the evidence, was chargeable to the defendant.

The case of Merchants' & Manufacturers' Bank v. Stafford Bank, 44 Conn. 564, Fed. Cas. No. 9,438, is wide of the mark. There the collecting bank was specially instructed, "Return at once without protest if not paid." This direction to return at once was not observed, and, as a direct result of the failure to comply with this instruction, the plaintiff's loss occurred.

The motion for a new trial is denied.