Bown Brothers, Inc., Respondent, *v.* Merchants Bank
of Rochester, Appellant.   (Six Actions.)

**Banks and banking — bills, notes and checks — contract — principal and agent — negligence — bank which accepts drafts for collection acts as agent and is bound to exercise high degree of fidelity and diligence — drafts with bill of lading and documents attached delivered for collection in foreign country — duty of bank to promptly notify customer where it finds that drawee is forbidden by law to sign prescribed certificate.**

1. A bank, which accepts drafts for the purchase price of merchandise, with bill of lading and documents attached, for collection, undertakes to present them to the consignees and receive the amounts called for. It acts as agent of the shipper and as such is bound to exercise a high degree of fidelity and diligence in the performance of its duties and to act in the interest of its principal.

2. Where, in an action to recover the amount of drafts delivered by plaintiff to defendant for collection in a foreign country, it appears that plaintiff had agreed with defendant that the documents were only to be delivered to the consignees upon their signing and delivering a certain form of certificate, but, when the drafts were presented the consignees refused to sign the certificate on the ground that they were prohibited from so doing by the law of the country, but offered to sign a similar certificate prescribed by their law and accept and pay the drafts, it was the duty of the defendant, through its correspondent, to promptly notify the plaintiff that the prescribed form of certificate could not be legally signed, and its failure so to do constituted a negligent act which made it liable for a loss sustained.

*Bown Brothers, Inc.,* v. *Merchants Bank,* 214 App. Div. 693, affirmed.

(Argued May 14, 1926; decided September 28, 1926.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 16, 1926, affirming a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term, a jury having been waived.

*George de Forest Lord* and *Sherman Baldwin* for appellant. There was no causal relation between the plaintiff's

damages and any acts or omissions of the defendant. (*Flett* v. *Royal Bank of Canada,* 207 App. Div. 272; 239 N. Y. 543; *Taggart* v. *Western Union Tel. Co.,* 198 App. Div. 366; *Lowery* v. *Western Union Tel. Co.,* 60 N. Y. 198; *White* v. *Western Union Tel. Co.,* 153 App. Div. 684; *Landsberger* v. *American Tel. Co.,* 32 Barb. 530; *Altman* v. *Western Union Tel. Co.,* 84 N. Y. Supp. 54; *Brooke* v. *Tradesmen's National Bank,* 69 Hun, 202; *Brauer* v. *Oceanic Steam Navigation Co.,* 66 App. Div. 605; *Chapman* v. *Fargo,* 223 N. Y. 32; *Coppola* v. *Kraushaar,* 102 App. Div. 306.) The signature of the British form or a form similar thereto by the drawees was a material condition precedent to defendant's obligation to surrender the documents and collect the drafts. (2 Williston on Contracts, § 671; *Carroll* v. *Title Guarantee & Trust Co.,* 131 App. Div. 221; *Sun Printing & Publishing Assn.* v. *Remington Paper & Power Co.,* 235 N. Y. 338; *Cameron-Hawn Realty Co.* v. *City of Albany,* 207 N. Y. 377; *Oakley* v. *Morton,* 11 N. Y. 25; *Koster* v. *Lafayette Trust Co.,* 147 App. Div. 63.) Performance of the condition was not excused by impossibility or by illegality under the Swedish law. (*Van Horn* v. *Kittitas County,* 112 Fed. Rep. 1; *Tweedie Trading Co.* v. *McDonald Co.,* 114 Fed. Rep. 985; *Richards & Company, Inc.,* v. *Wreschner,* 174 App. Div. 484; *Rederiaktiebolaget Amie* v. *Universal Transp. Co., Inc.,* 250 Fed. Rep. 400; *Krulewitch* v. *Nat. Importing & Trading Co.,* 195 App. Div. 544; *Beebe* v. *Johnson,* 19 Wend. 500; *Ye Seng Co.* v. *Corbitt,* 9 Fed. Rep. 423; *Taylor* v. *Taintor,* 16 Wall. 366.)

*Carlton F. Bown* for respondent. Defendant is liable because of actual negligence and failure to act in good business faith. (*Shipney* v. *Bowery Bank,* 59 N. Y. 485; *First Nat. Bank* v. *Fourth Nat. Bank,* 77 N. Y. 320; *Commercial Bank* v. *Red River Nat. Bank,* 8 N. D. 382; *Pinkney* v. *Kanawha Valley Bank,* 68 W. Va. 254; *Diamond Mill Co.* v. *Groesbeck Nat. Bank,* 9 Tex. Civ.

## 368 Bown Brothers, Inc., *v.* Merchants Bank.

App. 31; *Clark & Co.* v. *Bank of Wheeling,* 17 Penn. St. 322; *Second Nat. Bank* v. *Merchants Bank,* 111 Ky. 930.) There is evidence of damage to plaintiff growing out of defendant's negligence. (*First Nat. Bank* v. *Fourth Nat. Bank,* 77 N. Y. 320.) The British and Swedish forms are similar; therefore, defendant had no right to insist on the British form rather than the Swedish form. (*Greenleaf* v. *Goodrich,* 101 U. S. 278; *Rhode Island Hospital Trust Co.* v. *Olney,* 16 R. I. 184; *State ex rel. Sigsbee* v. *City of Birmingham,* 160 Atl. Rep. 196; *State ex rel. City of Butte* v. *Weston,* 29 Mont. 125.)

McLaughlin, J. Six actions were brought, each involving defendant's liability on a draft drawn by plaintiff and delivered to and accepted by defendant for collection. They were tried together, and argued together at the Appellate Division and in this court. They will be so considered in this opinion.

At the trial a jury, by stipulation made in open court, was waived, and the trial then proceeded before the judge as though he were sitting at Special Term. There was substantially no dispute as to the facts.

The trial court reported in favor of the plaintiff and upon the decision rendered by him judgment was entered, and an appeal was taken from the judgment to the Appellate Division where the same was affirmed, one of the justices dissenting. An appeal was then taken to this court.

In 1916, during the World War, the plaintiff consigned to certain consignees in the Kingdom of Sweden a quantity of dried fruit, and on the first of May of that year it delivered to the defendant certain drafts for the purchase price of such fruit, with documents attached, with direction to present the same to the consignees and collect the amount called for. The defendant accepted the drafts for the purposes stated and forwarded the same, with documents attached, to its correspondent, Brown

Bros. & Co., in New York city and that firm, in turn, forwarded them to its correspondent in London — Brown, Shipley & Co. The drafts were never collected and the actions were brought to recover from the defendant the amount of them, upon the ground that the bank's failure to collect was due to its negligence and made it liable.

At the time the drafts and documents were forwarded, England and other European countries were at war with Germany. The British government was endeavoring to exercise control over foreign trade to the end that food products should not reach its enemies through neutral countries. The British fleet was seizing some vessels carrying such goods to neutral ports. To insure freedom from such seizure, it was necessary for the purchaser to declare that the goods consigned to it would not be re-exported to countries at war with Great Britain. To accomplish the purpose sought, the British government had formulated a certificate known as the "British form" which purchasers were required to sign, and which British bankers were required to use in making collection of drafts representing foreign shipments.

Some time in March, 1916, the defendant, through its New York correspondent, was advised that before undertaking items for collection drawn upon European countries, the London bank desired to receive confirmation that documents were only to be delivered to the consignees upon their signing and delivering the "British form." This fact was called to the attention of the plaintiff and it agreed that collections were to be made in this way.

On the 17th of April, 1916, a law was passed by the Kingdom of Sweden providing for a form of neutrality declaration and providing that the form prepared by it — and no other — should be used by Swedish subjects. The Swedish form differed somewhat from the British form but, in the main, provided that the goods were exclusively for consumption in Sweden and would not be re-exported. Neither the plaintiff nor the defendant

24

had any knowledge of this law at the time the drafts in suit were made in May, 1916.

Shipments were made from New York in different vessels during the month of May, 1916, and there is no dispute between the parties but what the purchasers became legally obligated for the purchase price at the time the goods were shipped. All that remained for the plaintiff to do was to cause the drafts, with bill of lading and documents attached, to be presented to the consignees and receive the amount called for in the drafts. It was this obligation which the defendant undertook to perform when it accepted the drafts for collection.

The fact is not disputed but what the drafts in the regular course of business were presented to the consignees and accompanying them was the British form of neutrality declaration. The buyers refused to sign this form on the ground that they were prohibited from so doing by the Swedish law. They did, however, offer to sign the Swedish form and, according to the findings, they were then ready, able and willing to accept and pay the drafts and take the bill of lading if they could sign such form. The representative of the defendant refused to deliver the drafts and documents upon those terms.

The defendant, upon receiving notice that the consignees refused to pay the drafts, called the plaintiff's attention to it, and asked for plaintiff's instructions. The plaintiff had no information as to the cause of the non-acceptance but immediately notified defendant that it was cabling its brokers in Sweden in connection with the refusal of the consignees to pay. It was not until some time thereafter that the defendant notified the plaintiff that it was the Swedish law which prevented the consignees from signing the British form and paying the drafts, and asked for further instruction. In response to this inquiry the plaintiff advised defendant that the

consignees could not be required to break the laws of the Kingdom of Sweden and that, therefore, the signing of the British form should be waived.

The drafts some time thereafter, just when does not clearly appear, were protested for non-payment and the plaintiff notified, and it asked to have them returned.

But, in the meantime, vessels containing the fruit had been seized by the British government and the goods were subsequently sold in the Prize Court for a small amount, and the proceeds paid to the plaintiff were much less than the price agreed to be paid. The difference between what was realized and the amount of the drafts does not seem to be in dispute, nor is there any dispute but what this difference was the plaintiff's loss. Whether the defendant is liable for this loss is seriously disputed, and that presents the main question on this appeal.

The difficulty arose by reason of the fact that on the presentation of the drafts, the buyers could not sign the British form because of the law of the Kingdom of Sweden. This being so, what was the defendant's duty, acting through its agent? I am clearly of the opinion that it could not rightfully insist that the British form should be signed. The agent knew that was legally impossible, and prompt notice of that fact should have been given. It was a negligent act on its part that it did not do so.

In answer to this suggestion, the defendant contends that the contract contemplated that the British form was to be used and that it had no right to surrender the documents and collect the drafts unless that form was used, and no other. The fact that the Swedish consignees could not sign that form, it is urged, was no concern of the defendant. Defendant claims that its duty was discharged when it presented the drafts and documents with the British form. I do not think this follows. The bank acted as the agent of the plaintiff.

As such agent it was bound to exercise a high degree of fidelity and diligence in the performance of its duties. (*First National Bank of Meadville* v. *Fourth National Bank*, 77 N. Y. 320; *Isham* v. *Post*, 141 N. Y. 100, p. 106.) An agent is bound to a high degree of loyalty to his principal, and in carrying out the duties imposed on him he is bound to act in the interest of his principal.

When the agent ascertained that the Swedish consignees could not sign the British form, it should have adopted some other course which would result in accomplishing the purpose for which the agent had been selected. The purpose was to present the drafts with documents and collect the amount called for. This it could very easily have done if it had permitted the Swedish form to be signed. The bank, acting through its agent, was certainly obligated, immediately upon discovering that the British form could not be signed, to notify the plaintiff. This it did not do. The knowledge which the agent had was the knowledge of the defendant. The only thing which the plaintiff was interested in was the collection, and for that purpose it employed the bank. The method adopted by the bank in making the collection was no concern of the plaintiff. It was not a material part of the arrangement between the plaintiff and the bank, but was a mere detail in the execution of such arrangement. The performance of the details of the arrangement between the plaintiff and the bank as to the certificate of neutrality was to be in Sweden and was regulated by the law there in force. (*Hall* v. *Cordell*, 142 U. S. 116; *Union National Bank* v. *Chapman*, 169 N. Y. 538.)

When the Swedish law became operative, then the parties were relieved from performance in the manner contemplated and it was the duty of the bank's agent to do what it could to save its principal from loss or lessen its damage. (*Williams* v. *Vanderbilt*, 28 N. Y. 217, p. 223; *Van Buskirk* v. *Roberts*, 31 N. Y. 661; *Hart* v. *Myers*, 59

Hun, 420; affd., 128 N. Y. 578; *Exchange National Bank*
v. *Third National Bank*, 112 U. S. 276, p. 291.)

It was the duty of Brown, Shipley & Co., who knew
that a collection of the drafts could not be made if the
British form was insisted upon, but that it could be made
if the Swedish form was used, to have promptly so
notified the plaintiff, through its correspondents. This
certainly was an obligation imposed upon the defendant.
(*Shipsey* v. *Bowery National Bank*, 59 N. Y. 485, p. 491;
*Second National Bank* v. *Merchants' National Bank*, 111
Ky. 930.) Its failure in this respect, in my opinion,
constituted a negligent act which made it liable to the
plaintiff for the loss sustained. The trial court so found,
and its findings were affirmed by the Appellate Division.

The judgment appealed from should be affirmed,
with costs.

HISCOCK, Ch. J., CARDOZO, POUND, CRANE and LEH-
MAN, JJ., concur; ANDREWS, J., absent.

Judgment affirmed.