GROWER'S MARKETING SERVICE, INC. *vs.* WEBSTER AND ATLAS NATIONAL BANK OF BOSTON.

Suffolk.    May 8, 9, 1945. — July 25, 1945.

Present: FIELD, C.J., LUMMUS, QUA, RONAN, & WILKINS, JJ.

*Bills and Notes*, Ownership, Collection.  *Agency*, What constitutes, Agent's liability to principal.  *Bank and Banking*.  *Negligence*, Bank, Collection of money.  *Proximate Cause*.

On conflicting evidence respecting drafts, drawn by a Florida shipper upon a consignee in Boston, payable on demand to a designated bank in Florida through a bank in Boston, deposited by the drawer with the Florida bank, his regular depositary, indorsed by the Florida bank "to the order of any bank, banker or trust company," and sent to the Boston bank for collection, a finding was warranted that the Florida bank did not become owner of the drafts but merely agent of the drawer for collection.

A bank in Florida which was agent for collection of a draft drawn upon a Boston drawee and payable through a designated Boston bank had authority to forward the draft to the Boston bank to make collection, and the Boston bank, upon receiving the draft, became responsible to the drawer for damage resulting from a failure to exercise reasonable skill, diligence and care consonant with the nature of its undertaking and instructions given.

Evidence of the conduct of a Boston bank as agent for collection of a draft drawn in Florida upon a Boston drawee, with no bill of lading attached, on which no protest was required, and which was not paid by the drawee, who failed about a month after the bank received it, warranted a finding that the bank did not exercise the skill, diligence and care required in the circumstances, and that such neglect resulted in a loss to the drawer of the amount of the draft.

It is a general rule that failure of a collecting bank promptly to inform a forwarding bank of the status of collection items can be found to be a breach of duty on the part of the collecting bank.

CONTRACT OR TORT.  Writ in the Municipal Court of the City of Boston dated October 21, 1941.

On removal to the Superior Court, the action was tried before *Leary*, J.

The trial judge refused the following requests by the defendant for "instructions to the jury": "3. The plaintiff could not have sued the drawee, E. C. Fitz & Co. upon

any of the drafts in question, the drawee not having accepted the same, but would have had to base such suit upon the claims for which the drafts were respectively drawn. . . . 14. On all the evidence a finding would not be warranted that any instructions were given defendant on the plaintiff's behalf as to any of the drafts, either that they should be returned immediately upon nonpayment or that they should not be 'held for the convenience of parties.'" The following request of the defendant was given: "4. If the plaintiff knew, or had cause to know, that the drafts remained unpaid, it would have been in no better position to bring suit against the drawee, E. C. Fitz & Co., if the drafts had been returned to it by the defendant at an earlier date."

A motion by the defendant that "a verdict" be directed for the defendant was denied. There were verdicts for the plaintiff on several counts of the declaration. The defendant alleged exceptions.

*P. B. Buzzell,* for the defendant.

*S. Cohen,* for the plaintiff.

QUA, J. This action, with counts in contract and in tort, rests upon the alleged failure of the defendant to perform its duty to the plaintiff in the matter of collecting four drafts or bills of exchange (G. L. [Ter. Ed.] c. 107, § 149), whereby the plaintiff claims that it suffered loss.

Each draft was for the purchase price of a carload of fruit consigned by the plaintiff in Florida to E. C. Fitz & Co. in Boston. All four drafts were in the same form, drawn by the plaintiff upon E. C. Fitz & Co., payable on demand to First State Bank, Eustis, Florida, through the defendant. The bills of lading were not attached. The drafts bore different dates from November 16, 1940, to December 11, 1940, and aggregated in amount $2,284.42. They were all indorsed by First State Bank "Pay to the order of any Bank, Banker or Trust Co." and were forwarded by First State Bank to the defendant with instruction slips identical in form addressed to the defendant, each slip stating that the item was enclosed "For Collection and Remittance." Opposite the word "Protest" was the word "No." There

was evidence that the defendant received the drafts at different dates from November 22 to December 16 and immediately acknowledged the receipt of each item. None of the drafts was ever collected. On January 15, 1941, E. C. Fitz & Co. made an assignment for the benefit of creditors. The cashiers of both banks could find no record of any communication from the defendant to the First State Bank until January 31, when the defendant sent that bank a letter returning the drafts and advising of the assignment.

1. There was no error in denying the defendant's motion for a directed verdict.

(a) There was evidence for the jury that title to the drafts did not pass to the First State Bank upon their deposit there by the plaintiff, and therefore that the plaintiff was the proper party to bring the action.

The general rule is that where the forwarding bank (here the First State Bank) receives the paper as the equivalent of cash, gives final credit to the depositor for it, and permits him to draw against it, the paper becomes the property of that bank; but where it is agreed that the deposit is for collection only, although the depositor indorses without express restriction, the bank is a mere agent and not the beneficial owner of the paper. *Moors* v. *Goddard*, 147 Mass. 287. *Manufacturers' National Bank* v. *Continental Bank,* 148 Mass. 553. *Freeman's National Bank* v. *National Tube Works Co.* 151 Mass. 413, 417. *Shawmut National Bank* v. *Manson*, 168 Mass. 425, 427. *Taft* v. *Quinsigamond National Bank,* 172 Mass. 363. *Salem Elevator Works, Inc.* v. *Commissioner of Banks,* 252 Mass. 366, 370–371. *Boston-Continental National Bank* v. *Hub Fruit Co.* 285 Mass. 187. *American Barrel Co.* v. *Commissioner of Banks,* 290 Mass. 174. *Douglas* v. *Federal Reserve Bank,* 271 U. S. 489. In so far as the law of Florida has been called to our attention it appears to favor the agency relationship at least to as great an extent as does our own law. *Florida Power & Light Co.* v. *Newsom,* 111 Fla. 154. *Dakin* v. *Bayly,* 290 U. S. 143, 147.

The plaintiff's office manager, called by the plaintiff,

testified that the drafts were deposited with the First State Bank, the plaintiff's regular depositary, "just the same as checks or any other funds would be deposited daily as they are recorded as the cars are shipped"; that the First State Bank had given the plaintiff credit for the drafts when they were deposited; that the plaintiff had drawn against that credit just as if it had deposited a check; and that when the drafts were returned they were charged back to the plaintiff's account. This evidence tended to show that the First State Bank had become the owner of the drafts, and that the plaintiff had no further interest in their collection. But there was other evidence favorable to the plaintiff. The cashier of the First State Bank stated in a deposition that that bank "had no claim or interest of any kind by way of ownership, pledge, security or otherwise in the drafts or any of them or in the claims represented thereby," and that "the plaintiff, as owner of the drafts, entrusted all the drafts to the First State Bank for collection . . . ." Similar evidence was contained in a deposition by an employee of that bank. The jury were not obliged to find, as the defendant contends they were, that this evidence referred only to the situation after the drafts had been returned and charged back to the plaintiff. If the jury believed this evidence they could find that the First State Bank was never the owner of the paper but was merely the agent of the plaintiff to collect it.

If the First State Bank was an agent to collect, it had authority to forward the drafts to the defendant to make the collection in Boston, and under the rule long recognized in this Commonwealth and known generally as the "Massachusetts rule" the defendant as collecting bank became an agent of the plaintiff responsible to it and was not an agent of the First State Bank. *Fabens* v. *Mercantile Bank,* 23 Pick. 330. *Dorchester & Milton Bank* v. *New England Bank,* 1 Cush. 177. *Lord* v. *Hingham National Bank,* 186 Mass. 161, 163–164. *Central Trust Co.* v. *Hanover Trust Co.* 242 Mass. 265, 267. *American Barrel Co.* v. *Commissioner of Banks,* 290 Mass. 174, 180. We understand that this rule prevails in Florida where the original agency was created.

Fla. Sts. (1941) § 674.74. *Edwards* v. *Lewis,* 98 Fla. 956. *Federal Reserve Bank* v. *Malloy,* 264 U. S. 160.

(b) There was evidence for the jury that the defendant failed in the full performance of its duty to the plaintiff in the matter of collecting the drafts.

It is commonly said that the duty of a collecting bank is to be determined according to the law and established customs of the place of collection. See Morse on Banks and Banking (6th ed.) § 220; *Warren Bank* v. *Suffolk Bank,* 10 Cush. 582. There was no evidence of any general custom in Boston, but undoubtedly the law itself requires the exercise of reasonable skill, diligence, and care consonant with the nature of the undertaking and the instructions given. *Fabens* v. *Mercantile Bank,* 23 Pick. 330. *Mechanics Bank* v. *Merchants Bank,* 6 Met. 13. *Whitney* v. *Merchants' Union Express Co.* 104 Mass. 152, 154.

The defendant's cashier testified that the defendant had the drafts in its possession from the time they were received until January 31, 1941 — a period ranging from about a month and a half in the case of the latest draft to well over two months in the case of the earliest draft; that all were received to collect and remit; and that "it was the practice . . . [of the defendant] upon receipt of such a draft to present it to E. C. Fitz & Co. for payment." In answer to interrogatories the same witness stated that "the defendant did not present said drafts for collection." He also answered that the defendant sent E. C. Fitz & Co. "written notification or demand as to each draft" on a form in common use by the defendant, copies of which were not kept; that "as far as he knew such notices were sent to E. C. Fitz & Co. immediately upon receipt of said drafts"; that his information was that there were also oral communications at intervals, but after inquiry and examining the bank's records he could not specify their dates. He further testified that until January 31 he never notified the First State Bank or the plaintiff that E. C. Fitz & Co. had not paid the drafts; that those were "straight demand drafts" and "not the type of draft that is presented for acceptance"; that "an employee of the bank sent a messenger

down with a notice to E. C. Fitz & Co. on the day the drafts were received"; and that before January 15 (the date of the assignment) the witness knew "there was some trouble with E. C. Fitz & Co. but did not know they intended to fail." An employee of the defendant testified that notices were sent to E. C. Fitz & Co. when the drafts were received and that every few days he would call the company on the telephone "until finally the office did not answer." There was evidence that on the dates when the defendant received the drafts E. C. Fitz & Co. had on deposit with the defendant sums varying from $11,757.53 on the day the first draft was received to $4,938.21 on the day the last draft was received, but that the company owed the defendant sums in excess of the deposits on loans which were badly secured and on which the defendant would have suffered a substantial loss if it had not been for the death of David S. Fitz, on whose life it held a policy of insurance for $15,000. There was some evidence that on two or three occasions while the drafts were in the defendant's possession the plaintiff learned upon inquiry at the First State Bank that that bank had not received payment, and that the plaintiff had asked that bank to send a tracer. It could have been found, however, that these occasions were at or about the time of the assignment or afterwards. The plaintiff learned of the assignment by a telegram from E. C. Fitz & Co. dated January 16. The First State Bank had no record of any advice as to any reason why the defendant held the drafts as long as it did.

Bearing in mind that the jury could reject evidence and inferences favorable to the defendant and could adopt those favorable to the plaintiff, we cannot say that a finding that the defendant failed in the performance of its duty was unwarranted. The jury could find that although it was the practice of the defendant to present such drafts to E. C. Fitz & Co. for payment, the defendant did not do that with the drafts in question. The jury may have been skeptical as to the notices to E. C. Fitz & Co. and the telephone conversations of which the defendant had no record. Or they may have believed that a time came when E. C. Fitz &

Co. would not even answer telephone calls. Yet they could find that the defendant neglected to notify the forwarding bank of the situation until more than two weeks after the drawees had actually failed, although the defendant knew before that time that the drawees were in trouble. The jury could find that during all this time the defendant had a private interest in not having the drafts paid, since any reduction in the liquid assets of the drawees might adversely affect the defendant's inadequately secured claim against them. And there was no evidence of any custom in Boston banking circles excusing the defendant from doing more than it did do.

We do not mean to say that any rule of law required the defendant to make a formal presentment of paper on which protest was not required. See G. L. (Ter. Ed.) c. 107, § 134. We say only that in our opinion failure of the defendant to deal with the drafts in question as it usually dealt with similar drafts might be thought by the jury to be of some significance in connection with the other evidence in this case. But it seems that as a general rule failure of the collecting bank promptly to inform the forwarding bank of the status of collection items can be found to be a breach of duty on the part of the former.[1]

(c) It cannot be said that there was no evidence for the jury that the defendant's neglect resulted in the loss to the plaintiff of the amounts of the drafts. They could find that E. C. Fitz & Co. continued to do business for weeks after the drafts arrived, and that they could have paid the drafts by checks upon the defendant. During the period in ques-

---

[1] *Bank of Mobile* v. *Huggins*, 3 Ala. 206, 212. *Perry State Bank* v. *Myers*, 159 Ark. 253, 256–257. *Continental National Bank* v. *Discount & Deposit State Bank*, 199 Ind. 290, 309–310. *Sprague* v. *Farmers' National Bank*, 63 Kans. 12. *Feeders Supply Co.* v. *First National Bank*, 103 Kans. 654 (syllabus by the court). *Olds Motor Works* v. *First State Savings Bank*, 258 Mich. 269. *Bank of Shaw* v. *Ransom*, 112 Miss. 440, 451. *Dern* v. *Kellogg*, 54 Neb. 560. *Bown Brothers, Inc.* v. *Merchants Bank*, 243 N. Y. 366. *Fahey* v. *Irving Trust Co.* 247 App. Div. (N. Y.) 767. *Kershaw* v. *Ladd*, 34 Ore. 375, 383. *Wingate* v. *Mechanics' Bank*, 10 Penn. St. 104, 109–110. *Sahlien* v. *Bank*, 90 Tenn. 221, 233. *Mound City Paint & Color Co.* v. *Commercial National Bank*, 4 Utah, 353. *Merchants' & Manufacturers' Bank* v. *Stafford National Bank*, Fed. Cas. No. 9438. *Bank of Bay Biscayne* v. *Monongahela National Bank*, 126 Fed. 436. *Ungerleider* v. *Citizens Commercial & Savings Bank*, 104 Fed. (2d) 718. Michie on Banks and Banking, c. 10, §§ 11, 22, 59, 60, 62, 63, 72. See *Colt* v. *Noble*, 5 Mass. 167.

tion the defendant allowed the account of E. C. Fitz & Co. to be drawn down without insisting upon payment of its loan. There was evidence, introduced without objection, of statements taken from the books of E. C. Fitz & Co. showing assets as of November 30, 1940, of $92,330.58, much of which was unencumbered and attachable. Another statement as of the date of the assignment showed assets of $38,200. In view of evidence of the small amount actually realized by the assignee it is difficult to believe that many of these assets were of anything like the values assigned to them, but the weight of the evidence was for the jury. At least the bank deposits were valuable and available, as were a number of other items of assets. Consistently with what has been held in other cases, we cannot hold unwarranted a finding that if these drafts had been treated as the previous similar drafts had been, and if any refusal to pay had been followed by prompt and complete information to the plaintiff through the forwarding bank, the drafts would have been collected. *Lord* v. *Hingham National Bank,* 186 Mass. 161, 164–165. *National Non-Theatrical Motion Picture Bureau, Inc.* v. *Old Colony Trust Co.* 270 Mass. 34, and cases cited.

2. The defendant's exception based upon its objection to a cross-interrogatory filed by the plaintiff for the purpose of taking the deposition of one Stockwell must be overruled, since the record fails to show what answer, if any, was made to the question. *Cecconi* v. *Rodden,* 147 Mass. 164, 169.

3. There was no error in the failure to give in terms the defendant's third request for ruling in view of the instruction given that the plaintiff "was at perfect liberty to sue" even if the drafts were in Boston, and in view of the granting of the defendant's fourth request.

4. There was no error in denying the defendant's fourteenth request. The judge cannot be required to instruct the jury that they must not find every conceivable fact of which there is no evidence, which no one contends existed, and which there is no reason to suppose the jury will find. It was apparent that no directions were given by the forwarding bank to the defendant other than those contained

in the forwarding slips, and there was no issue in the case as to any additional directions. See *Perella* v. *Boston Elevated Railway*, 306 Mass. 547, 550–551; *Smith* v. *Miles*, 296 Mass. 126, 129.

5. The denial of the defendant's motion for new trial based on the grounds that the verdicts were against the evidence and the weight of the evidence and that the damages were excessive gave the defendant no sound exception. *Bartley* v. *Phillips*, 317 Mass. 35, 41–44.

*Exceptions overruled.*