DANIEL WATSON

*v.*

JULES F. ROTH, Special Admr.

*Opinion filed June 19, 1901—Rehearing denied October 10, 1901.*

1. SPECIAL INTERROGATORIES—*when answer relates to ultimate fact.*
In an action to recover money loaned by the defendant, as agent
for plaintiff's intestate, to insolvent parties, where the issues are
the existence of a promise or duty on the part of the defendant to
use due care in making the loan and his failure to exercise such
care, the answer "no" to the special interrogatory "was Daniel
Watson [the defendant] reasonably prudent and careful in making
the loan in question?" is not objectionable as relating to an evi-
dentiary and not an ultimate fact.

2. PRINCIPAL AND AGENT—*agent to loan money must exercise reason-
able care.* A banker engaged in loaning money as agent for a cus-
tomer must use the ordinary care and prudence common to bankers
to guard against loaning the money to insolvent parties.

*Watson v. Roth,* 91 Ill. App. 111, affirmed.

APPEAL from the Appellate Court for the Third Dis-
trict;—heard in that court on appeal from the Circuit
Court of Vermilion county; the Hon. F. BOOKWALTER,
Judge, presiding.

H. M. STEELY, and O. M. JONES, for appellant.

PENWELL & LINDLEY, and S. A. BRISTOW, for appel-
lee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the
court:

Appellee brought this suit, as administrator of the
estate of Nancy A. Gilbert, in the circuit court of Ver-
milion county, against appellant, to recover $3000 loaned
by appellant, as the agent of said Nancy A. Gilbert, to
Dwiggins Bros. The original declaration consisted of
the common counts, but on the trial the plaintiff was per-
mitted to add three special counts charging the defendant

with negligence in making the loan to Dwiggins Bros., who were alleged to have been insolvent, by means whereof the money loaned was lost. The defendant's pleas were the general issue and what his counsel call a plea of tender. Issue was joined on the plea of the general issue and replications were filed to the plea of tender traversing its allegations. On the trial there was a verdict for the plaintiff for $3000, upon which judgment was entered. The Appellate Court affirmed the judgment on appeal, and this further appeal was prosecuted.

The plea of tender alleged that the defendant had in his hands, as assets belonging to the estate of Nancy A. Gilbert, only the note of Dwiggins Bros. for $3000, given for the money loaned, and two other notes described in the plea, and $2097.20 in cash, which he had offered to the plaintiff and brought into court. At the trial the court permitted the plaintiff to reject the note of Dwiggins Bros. which was the subject of the suit, and to accept the other notes and money, and to this ruling the defendant excepted. It is claimed that plaintiff could not accept part of the tender and refuse to accept the remainder. The two notes and the balance in cash which were brought into court with the Dwiggins note were not in any way connected with the subject matter of the suit. There was no controversy between the parties as to those notes and that money, but they were separate and distinct items of property conceded to belong to the plaintiff. No authority is cited in support of the rule contended for, and no reason is given why the defendant could make the acceptance of the other notes and money conditional upon the acceptance of the Dwiggins note which had been repudiated and rejected by the plaintiff. We do not see how the rule that a legal tender in satisfaction of an alleged indebtedness must be accepted or refused as a whole can be applied here, and there was no error in the court allowing the plaintiff to take the notes and money conceded to belong to him and not connected with the

litigation, without compelling him to take the note which was in dispute.

It is also contended that there was a variance between the allegations and the proof, because the declaration alleged a special promise by the defendant to Nancy Gilbert to use reasonable care and diligence in loaning her money, while the evidence tended to establish facts from which the law would imply a promise or duty to use such care and diligence. The question sought to be raised was not presented in the trial court either by objection to the evidence when offered, or motion to exclude it, or in any other way. The trial court did not pass upon the question of a variance, and there is no ruling on the subject in the record. If there is any force in the argument, the question is not open to review here. *Libby, McNeill & Libby* v. *Scherman*, 146 Ill. 540.

The next complaint is, that the court gave to the jury, at the request of plaintiff, the following special interrogatory: "Was Daniel Watson reasonably prudent and careful in making the loan in question to Dwiggins Bros.?" The answer was "No." The objection made is, that the interrogatory relates to and calls only for an answer as to an isolated evidentiary fact and not to any ultimate fact in the case. Under the issues formed, the existence of the promise or duty, the insolvency of Dwiggins Bros. and the want of reasonable care and diligence on the part of the defendant were ultimate facts affirmed by the plaintiff and denied by the defendant. The question submitted related to one of these ultimate facts upon which the rights of the parties depended. It was one of the ultimate facts in issue, and there was no error in submitting it. The answer was consistent with the general verdict.

The court refused to give an instruction requested by the defendant, stating that if the jury believed that Dwiggins Bros. had been adjudged bankrupts, then before the plaintiff could recover he must show that he had

proved his claim against the estate of Dwiggins Bros.
and realized all that was possible thereon from said es-
tate, so as to fix the amount of damages or the amount
due him. It is argued that the amount of loss not having
been ascertained, the suit is premature and could not be
maintained, and that until the estate of the bankrupts
should be settled there could be no determination of the
plaintiff's damages. There was neither pleading nor evi-
dence upon which to base the instruction. One of the
Dwiggins brothers incidentally stated in his testimony
that he had been declared bankrupt; but what had been
done, if anything, in that proceeding, or what, if any-
thing, would be paid upon the indebtedness of Dwiggins
Bros., in no way appeared. The plaintiff claimed that
the defendant, as Mrs. Gilbert's agent, had so negligently
performed his duty that plaintiff was not bound to accept
the Dwiggins note and he had refused to receive it. The
note had not been in the possession of the plaintiff, and
he had done nothing in affirmance or ratification of the
loan. If, under any circumstances, a plaintiff would be
bound to pursue the estate of a bankrupt and recover
what could be obtained in that way, there was no such
duty here.

Objection is made to instructions given at the request
of plaintiff, on the ground that they ignored the defense
that Mrs. Gilbert authorized or instructed the defendant
to loan the money in question to Dwiggins Bros. The
defendant is a banker doing business at Rossville, and
Mrs. Gilbert was his customer. She had been sick and
had been in Florida, and had gone to California in the
fall of 1896, where she remained. The loan was made
on June 20, 1898. The alleged defense which, it is said,
the instructions ignored, rested only on the testimony of
Alvin W. Gilbert and a letter of Mrs. Gilbert. Alvin W.
Gilbert testified that in the fall of 1896, before Mrs. Gil-
bert left for California, she spoke to the defendant at the
house of the witness about the loan of some money that
191—25

would be paid in shortly. She asked defendant if he had any person in view, and he said he did not know of any one then unless it was the Dwiggins brothers, who had spoken to him about money. He said that Charles Dwiggins sold a farm and came there and put it in the store and he considered them good, and she said she thought they were and she knew them. She said she guessed they were all right and he could loan it. The letter was written from California to defendant, dated June 11, 1897, in which Mrs. Gilbert said: "You can let Mr. Dwiggins have that money when it is paid in, if he still wants it." This evidence was all there was tending to show that defendant was merely following the directions of Mrs. Gilbert. The letter was written more than a year before the loan, and the conversation was many months previous to the letter. If it could be said that the evidence fairly tended to establish the alleged defense, it was presented to the jury by an instruction that if Nancy Gilbert, either in person or by letter, authorized or instructed the defendant to loan the money to Dwiggins Bros. or to Mr. Dwiggins, one of the firm, and did not require sureties upon the note, he would have the right to loan the money to such person or persons without security and would not be responsible to Mrs. Gilbert or the plaintiff for the loss sued for. The instructions given at the instance of plaintiff did not direct a verdict upon finding the facts according to plaintiff's theory, but they made no reference to the question whether defendant made the loan by direction of Mrs. Gilbert. Taking the instructions together, they are not of such a character as to mislead the jury upon the question whether the defendant was merely carrying out instructions. The court refused some instructions on the question of the liability of the defendant if the evidence showed that he used such care as a reasonably prudent person would have used and exercised in making the loan, but the principle contained in them was sufficiently covered by the first

and second instructions given at the request of defendant. We find no error in the rulings on the instructions.

Defendant made his motion for a new trial, which was overruled November 23, 1899. He excepted to the ruling, and judgment was entered against him for $3000 and costs of suit, to which judgment he excepted and from which he prayed an appeal. On December 9, 1899, he made a motion to set aside the former order and for a new trial upon the ground of newly discovered evidence. This motion was overruled, and defendant excepted. On the hearing of the motion, defendant showed by affidavits that after judgment was entered he found a letter from Mrs. Gilbert to him, written from Los Angeles, California, and dated May 9, 1898, as follows:

"*Mr. D. Watson:*

"DEAR SIR—I received your letter of march the 28 i was glad to hear you was all well I was in hopes Mr. Cadwalder would keepe that money but if you dont get that farm loan I think you had better let Mr. Dwiggins have it I wrote to the foulks about him & they say he is all right I see that he is running that big store there yet. keepe it out on as long time as you can there is so many bank robbers & you cant tell how soon they will strike Rossvill."

The affidavit of defendant shows that he kept his correspondence at the bank and made repeated and diligent searches for the letter in all places where his correspondence or papers were usually kept and where he thought the letter could possibly be, but was unable to find it and believed it to be lost; that after the judgment his foster-daughter reminded him of the fact that he had given her a letter from Mrs. Gilbert containing flower seed for her, which had been placed with rubbish in the garret of his residence, and that search was made for the letter and it was then found. We think the affidavit showed that the evidence could not have been discovered before the trial by the exercise of proper diligence, but we do not think that it fulfills the further requirement that it would

probably change the result if a new trial should be granted. It shows that Mrs. Gilbert had made some inquiry of other parties concerning Mr. Dwiggins and had been informed that he was all right, but the defendant's affidavit shows that he did not understand the letter as directing the loan to be made to Dwiggins Bros. on her judgment, for he afterward wrote her, on June 7, 1898, that he failed to make collections in time to secure the farm loan, and if an opportunity did not present itself between that time and July he should invest the money in B. and L. orders bearing seven per cent, which he considered safe. The evidence at the trial established beyond question that the Dwiggins brothers were heavily involved when the loan was made; that they did business with the defendant, and that he was well aware of such facts that no prudent business man would have loaned the amount of money he did without security upon a common note due in two years after its date. They were running a store and their indebtedness was about $24,400, $9000 of which was due to the defendant. He probably did not know of $5000 of the indebtedness, but he knew that they owed over $19,000 and that they were not worth enough above their indebtedness to justify such a loan. He could not have regarded the loan other than as a precarious one, and the money obtained from it was applied upon an indebtedness due him or for which he was liable. He certainly knew that if Mrs. Gilbert was aware of these facts she would not make the loan, and if the letter were in evidence we cannot say that a jury would probably believe that a reasonably prudent and careful man, acting for another and situated as the defendant was, would have made the loan. It was his duty to exercise the ordinary care and prudence common to bankers in making the loan, and as we do not regard it probable that the newly discovered evidence would change the result, it was not ground for setting aside the judgment and granting a new trial.

The substantial questions upon the merits of the case are questions of fact, upon which the judgment of the Appellate Court is final, and we find no error in the record justifying the reversal of the judgment. The judgment is therefore affirmed.          *Judgment affirmed.*