DANIEL WATSON

*v.*

CHRISTIAN FAGNER.

*Opinion filed February 17, 1904.*

1. VARIANCE—*when failure to prove date of contract as alleged is not fatal.* In assumpsit upon a parol contract, where the day upon which the contract was made is alleged for form only, and where performance is not dependent upon such date, failure to prove the date as alleged is not fatal.

2. PRINCIPAL AND AGENT—*agent is liable for negligence in loaning customer's money.* A banker acting without compensation as agent or trustee for a depositor in investing and collecting the latter's money, is responsible for any loss resulting from his failure to exercise ordinary care and diligence in the performance of his duties.

3. EVIDENCE—*when the evidence warrants finding that a person was not a safe borrower.* Evidence that the person to whom a banker loaned his customer's money without security was already largely indebted to the bank and had not paid the interest on his loans for several years, his property being mortgaged and his affairs involved, warrants the finding that such person was not a "safe, responsible and conservative borrower."

· *Watson* v. *Fagner*, 105 Ill. App. 52, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Vermilion county; the Hon. F. BOOKWALTER, Judge, presiding.

This suit was brought to the January term, 1901, of the circuit court of Vermilion county, and resulted in a verdict for $4144.50 in favor of the plaintiff, Fagner, and after a *remittitur* of $373.80 had been entered and a motion for a new trial overruled, judgment was entered against appellant, Watson, for $3770.70. An appeal was taken by Watson to the Appellate Court for the Third District, where the judgment of the circuit court was affirmed, and a further appeal is prosecuted by Watson to this court. The first three counts of the declaration are common counts. The fourth count, after setting out that on June 1, 1900, the defendant was engaged in the banking

business, and that plaintiff, at the request of defendant, deposited $5000 with him, which defendant agreed to loan to safe, responsible and conservative borrowers and to use due diligence in collecting the same, charges that the defendant so carelessly and negligently loaned said sum that the same was wholly lost to the plaintiff, etc. An additional count, designated as the fifth count, was afterwards filed, which differs from the fourth count in that it charges that the defendant carelessly loaned said sum, on August 23, 1896, to Dwiggins Bros. and took a note therefor, and that when said note matured did not use due diligence in collecting the same, whereby the same was lost to the plaintiff, etc. Defendant filed the general issue and one special plea, to which replications were filed.

The transaction out of which this suit arose was the loaning of $3000 by Daniel Watson, for Christian Fagner, to Dwiggins Bros., who were in the mercantile business at Rossville, Illinois. Appellant was engaged in the banking business at Rossville and appellee in farming near that place, for some time prior to 1892. In the spring of 1892 appellee sold his personal property and took sale notes payable at appellant's bank, and after the sale placed the notes in the bank, so that they could be paid there and the proceeds credited to the account of appellee. After leaving the notes at the bank appellee went to Dakota, where he stayed for a period of seven months. In the spring of 1893 appellee bought property in and moved to Hoopeston, Illinois. The evidence of appellee tends to show that he went to appellant's bank to draw out money to pay for the property he had bought and that Watson requested him not to take his business away from Watson's bank; that appellant wanted to loan out and collect Fagner's money, and said that he would do it in a safe way, so that appellee would have no trouble; that he represented that he, appellant, knew all the people in Rossville and would loan appellee's

money so that it would be perfectly safe, and that he would loan it on the best security. The evidence tends to show that from the time of this conversation appellant transacted all of appellee's business of collecting interest and principal of notes when due and re-loaning the money; that appellee knew of some of the loans before they were made, but concerning others he was not consulted; that in 1895 appellee went to the bank and appellant told him there was about $3000 of his money in the bank, and asked him if he wanted to loan it; that appellant said a shoe factory and a building and loan association wanted some money; that he told appellant if they were good loans to let them have the money.

On August 23, 1896, appellant loaned to Charles Dwiggins and Howard L. Dwiggins, partners doing business under the name of Dwiggins Bros., $3000, and took a judgment note, signed by them alone, for that amount, payable to C. Fagner one year after date. The evidence tends to show that appellee was not consulted about this loan; that his notes were kept in an envelope in the bank and that he kept a list of the notes with him in a book; that in June or July, 1897, he took the envelope containing the notes home with him, and then for the first time learned of the loan to Dwiggins Bros. by finding their note in the envelope; that his book showed a loan of $3000 to a shoe factory but none to Dwiggins Bros.; that he kept the notes about a month and then returned them to the bank, at which time he called appellant's attention to the Dwiggins loan and asked him why it did not appear on his book; that appellant told him that the $3000 appearing on his book to the shoe factory was the Dwiggins loan, and that the shoe factory never had any of appellee's money; that appellant further said that the Dwiggins note was just as good as any in the bank.

It further appears that in June, 1898, appellee told appellant that he wanted the Dwiggins note collected,

and appellant said that he would collect it; that in July, 1898, appellee sent his son-in-law to notify appellant to collect the note by January 2, 1899, and that the son-in-law in December, 1898, again visited appellant at his bank to see if the note had been collected; that on January 2, 1899, appellee went to the bank to draw out money to pay for a farm which his son-in-law had bought, and asked whether the note had been collected, and appellant replied that it had not; that appellee told him to collect it as soon as possible, which appellant agreed to do, but at the same time told appellee that he ought not to be in a hurry; that Dwiggins Bros. were all right, and that he ought to leave it because it was a safe place.

In February, 1899, Ream, a step-son of Watson and cashier of the bank, took this note, together with two notes belonging to Watson, to a firm of attorneys in Danville. Ream indorsed Fagner's name on the note, and judgment by confession was taken on all the notes in one judgment, in favor of Watson. Appellee testified that he knew nothing of these proceedings until he saw an account of the failure of Dwiggins Bros. in the papers, and that he never authorized anyone to endorse the note for him.

In March, 1899, Dwiggins Bros. filed a petition in bankruptcy, and Watson filed a claim for the judgment against the bankrupts' estate, which paid a dividend of 25¾ per cent to creditors. Watson tendered to appellee $903.73, which represented the dividend on that portion of the judgment covering the note to Fagner, and interest, which tender was refused.

The evidence further shows that at the time of this loan to Dwiggins Bros. that firm was indebted to Watson at least $9000, with several years' interest thereon, $6000 of this amount having been loaned in 1890 or 1892, and $3000 in October, 1889, which latter amount was secured by a mortgage upon the building in which Dwiggins Bros. business was conducted. In 1898 this indebtedness

to Watson had increased to $12,500, and in 1898 Dwiggins Bros. told Watson that they had an equity of only $4000 or $5000 in the business. On January 25, 1899, one of the Dwiggins Bros. deeded the real estate, covered by the mortgage above mentioned, to Watson in consideration of $5000, he paying something over $800 in cash and satisfying the mortgage indebtedness with the remainder of the consideration.

H. M. STEELY, and J. B. MANN, for appellant.

PENWELL & LINDLEY, and C. M. BRIGGS, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The counts in the declaration setting up the express contracts aver that they were made on June 1, 1900. The evidence of the plaintiff shows the contract to have been made in the year 1893. The defendant, at the close of the plaintiff's testimony, moved to strike out the evidence in regard to this contract on account of this variance, and the action of the court in overruling that motion is assigned as error. A different rule prevails in this respect where the contract sued on is written from that which obtains where it is verbal. In assumpsit upon a parol contract, the day upon which it is made being alleged only for form, and where the time within which the contract is to be performed is not determined from that date, the plaintiff is at liberty to prove a contract express or implied, made at any time. *Singer* v. *Hutchinson,* 183 Ill. 606; *Frazer* v. *Smith,* 60 id. 145; *Searing* v. *Butler,* 69 id. 575.

The case of *Wabash Western Railway Co.* v. *Friedman,* 146 Ill. 583, is one in which the contract itself was not correctly described in the declaration. As counted upon there, the contract was to carry the plaintiff from Kirksville to Glenwood Junction while the evidence showed a contract to carry the plaintiff from Moberly to Ottumwa,

Kirksville and Glenwood Junction being intermediate stations between Moberly and Ottumwa, all on the line of the defendant. It will be observed that in the case at bar the date was no part of the contract, and the contract itself was not misdescribed.

There was no error in overruling the motion.

It is assigned as error that the court improperly permitted the plaintiff to testify that Watson's custom was to collect the principal and interest of plaintiff's notes and loan his money, and improperly permitted plaintiff to show that Watson caused or permitted the endorsement of Fagner's name upon the back of the note before it was put in judgment. This evidence tended to show that Watson was complying with the contract as plaintiff claimed it existed, and therefore supported the latter's theory.

It is also urged that the court erroneously refused to permit the defendant to show that Watson performed like services for other persons with reference to papers that were left in the bank merely for safe keeping. It is manifest that such testimony would not throw any light on the question as to whether such a contract existed between the parties hereto as appeared from the averments of the plaintiff's declaration. The evidence was properly excluded.

The exceptions taken to the action of the court in passing upon objections to other evidence offered are equally without merit and concern matters of less importance.

It is argued with earnestness that there was no evidence tending to support the fourth count of the declaration, in so far as that count charges a failure to loan the money to safe, responsible and conservative borrowers. We are unable to adopt this view. This loan was made on August 23, 1896, to Dwiggins Bros., and no security was taken. It appears that at the time they were the owners of a stock of merchandise in a country village;

that several years before, they had purchased the stock with which they had been carrying on their business, and that for the purpose of making this purchase they had borrowed $6000 from Watson, which still remained unpaid; that one of the brothers owned the building in which they carried on their business, and that Watson held a mortgage thereon for the sum of $3000; (this building was sold in 1899 for $5000;) that no interest had been paid on the real estate loan for several years, and that Watson had begun the practice of carrying an over-draft against the firm at his bank. It does not appear that the firm owned any other property, and while it is true that the evidence does not warrant the conclusion that Dwiggins Bros. were insolvent in August, 1896, it does warrant a finding that they were not safe, responsible and conservative borrowers, and to loan to them the sum of $3000 for one year without security was not a compliance with the contract declared upon by the fourth count.

Where a banker takes upon himself the duty of loaning money deposited with him and loans it to persons already largely indebted to the bank, who afterwards become insolvent, whereby the money of the depositor is lost, the act of the banker in making the loan is properly the subject of the closest scrutiny. In such case the suspicion will always arise that the money of the depositor was loaned with a view to carrying the borrower along until the money due the bank could be collected. Aside from the denial by Watson, and Ream, his cashier, that any contract was made with Fagner to loan his money and collect the principal and interest as they fell due, the defense was that, if such a contract existed, the loan to Dwiggins Bros. had been ratified by Fagner, and that Fagner himself, by an agreement with Howard Dwiggins, one of the makers of the note, had agreed that the note need not be paid until January 1, 1899, and had conveyed information of this agreement to Watson, and that Watson was thereby relieved from any duty

to collect. The evidence was conflicting in reference to whether or not there had been any ratification and in reference to whether there had been an extension of the time of payment. Under these circumstances it is contended that the two defenses last suggested were not properly submitted to the jury.

The first and eighth instructions given on the part of the plaintiff both advised the jury what facts are necessary to make the defendant liable to the plaintiff, but contained no reference whatever to a defense founded upon ratification or extension of the time of payment. By these instructions the jury were told that if they found certain facts from the evidence the defendant was liable, and it is not contended that such facts would not establish the liability of the defendant. The complaint is that the instruction did not deal with the affirmative defenses. The court gave to the jury six instructions of its own motion. By the second the jury were instructed that if Fagner ratified the making of the loan Watson would not be responsible for anything done prior to the ratification. By the sixth of these instructions the jury were advised that if the plaintiff extended the time of payment or assumed the burden of collecting the note, and that as a result thereof the note was lost, in whole or in part, Watson would not be responsible. The first and eighth instructions given at the request of plaintiff, when read in connection with the second and sixth given by the court of its own motion, are unobjectionable. The four instructions taken together are a harmonious whole, and state with accuracy the law of defendant's liability upon the contract counted upon and the law applicable to the alleged ratification and extension.

The defendant, on his part, by his nineteenth and twenty-second instructions, sought to have the jury advised that if Fagner extended the time of payment, and that such extension contributed to the loss of the money, Watson was not liable. In each of these instructions

this proposition was coupled with the statement that if the jury believed Fagner was negligent in allowing the note to run after it became due, Watson could not be held responsible. There was nothing in the evidence upon which to base this last direction to the jury. If the contract existed as Fagner claimed it did, then it was Watson's duty to collect the note when it matured, and the fact that Fagner merely failed to attempt the performance of a duty which rested upon the agent could not relieve the agent.

The defendant's fifth instruction is based on the theory that if Watson was a gratuitous bailee there would be liability for nothing except gross negligence. The court modified this instruction and gave it as modified, instructing the jury that Watson would be liable for "carelessness or negligence in making the loan or carelessness or negligence in failing to collect the same, which would amount to a want of ordinary care and diligence" on his part. The modification was properly made.

Where a banker acts as agent or trustee for his depositor, without compensation, in investing his money and collecting the same, he is bound to exercise ordinary care and diligence in the performance of the duties which he assumes, and a failure to observe such ordinary care and diligence will make him responsible for any loss resulting from such failure. *Isham* v. *Post*, 141 N. Y. 100; *Watson* v. *Roth*, 191 Ill. 382.

In the cases of *Gray* v. *Merriam*, 148 Ill. 179, and *Preston* v. *Prather*, 137 U. S. 604, the question of the liability of a bank as the gratuitous bailee of securities left as a special deposit was considered, and the conclusion reached that the bank was bound to exercise ordinary care and diligence. The reasoning followed in those two cases requires the exercise of the same degree of care and diligence where the duties assumed are the loaning of money deposited with the bank and the collection of the loans as they mature.

We have carefully considered the other objections urged to the giving and refusing of instructions, and are of the opinion that upon the whole the jury was fairly instructed. The defendant requested the giving of twenty-six instructions. The court gave four of these as requested, modified two others and gave them as modified, refused twenty and gave six of its own motion, while nine were given on the part of the plaintiff. Three instructions were offered by the defendant for the purpose of telling the jury that no recovery could be had under the first, second or third count of the declaration. The refusal of these instructions is complained of. No harm resulted from this action of the court, as it is apparent from the instructions given as a series that no recovery could be had except under the fourth or fifth count.

The defendant's seventh refused instruction was to the effect that the fact that Dwiggins Bros. were insolvent when the bankruptcy proceedings were begun was not evidence that they "were not safe, responsible and conservative borrowers" on August 23, 1896. It appeared that they were in failing circumstances at and after the making of the loan in question. The bankruptcy was the culmination of this condition of affairs. The instruction was properly refused.

In so far as the other instructions refused correctly stated principles of law applicable to this case, the same principles were embodied in instructions given. The principal questions in this case were issues of fact, which have been settled against appellant by the judgment of the Appellate Court.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*