## A. L. NEWTON v. HIGHLAND IMPROVEMENT COMPANY.[1]

Nov. 18, 1895.

Nos. 9339—(34).

**Contract—Payment on Estimates as Work Progresses.**

 A certain contract, whereby the plaintiff in this action agreed with defendant "to cut, grub, and remove or burn" certain timber upon part of a town site, "as directed by defendant's general manager," for a stated sum per acre,—payments to be made as work progresses, on estimates, reserving 15 per cent. "until final work is completed,"—construed. *Held* that, from the foregoing provision in regard to payment on estimates as the work progresses, the law implies that said estimates shall be properly and reasonably made, at proper and reasonable intervals as the work progresses, and at plaintiff's request.

[1] Reported in 64 N. W. 1146.

**Same—Refusal to Make Estimates.**

If defendant refused to make estimates at the time or times of plaintiff's requests, made in accordance with what is implied as above stated, and to make payments, the latter was justified in refusing to complete the contract.

**Same—Allegation of Demand.**

*Held,* as against an objection first made at the trial,—that the complaint failed to state a cause of action,—that an allegation that plaintiff duly demanded that estimates and payments be had and made is equivalent to an allegation that such demands were properly and reasonably made.

**Same—Estimates by Defendant.**

*Held,* that these estimates might be made by defendant.

**Contract to Remove or Burn as Directed.**

The phrase in the contract whereby plaintiff agreed "to cut, grub, and remove or burn" the timber, as "directed" by defendant's general manager, did not confer upon plaintiff the arbitrary and unqualified right to burn all material without regard to circumstances, nor did it authorize defendant's manager to arbitrarily order that all be removed, the latter method being much more expensive.

**Same.**

If there existed good and substantial reasons why certain of the material should be removed, instead of burned, the manager had the right to seasonably direct that this be done.

Appeal by plaintiff from an order of the district court for St. Louis county, Moer, J., denying a motion for a new trial. Reversed.

*Austin N. McGindley,* for appellant.

*McGiffert & Wickwire* and *Billson, Congdon & Dickinson,* for respondent.

COLLINS, J. In July, 1892, plaintiff and defendant corporation entered into a contract as follows: "Articles of agreement by and between A. L. Newton and the Highland Improvement Company, entered into this day: Party of the first part agrees to cut, grub, and remove or burn all the timber on the fifth and sixth divisions of Duluth Heights, as directed by the general manager of the Highland Improvement Company, leaving such trees only as he (the manager) may direct; also, to grub all stumps and down timber clean. And on such land as the company may direct that only close cutting be done, it shall be done accordingly. For above work faithfully performed

the Highland Improvement Company agree to pay the sum of eighty-five dollars an acre for all timber grubbed, and, for the close cutting, forty dollars an acre. Payments to be made as work progresses on estimates, reserving fifteen per cent. until final work is completed."

For the first cause of action, plaintiff alleged in his complaint that between the date of said contract and December 28, 1892, and again between May, 1893, and December 14, he entered upon the land with a large number of laborers, and complied with the terms of the agreement, and performed work and labor of the aggregate agreed value of $14,172.70; that of this sum he has been paid the sum of $9,025.28, and no more. He further alleged that on December 14, 1893, and on other days prior and subsequent thereto, he frequently and duly demanded of defendant that estimates be made, and that it make payments, but that the defendant refused to do either, and that, after due notice of his intention to abandon the contract and to refuse to proceed unless such estimates and payments were had and made, he abandoned the work, and declined to further perform. It was also alleged that from time to time in the year 1892, and as the work progressed, estimates and payments were had and made by defendant, as provided by the terms of the contract. A bill of particulars was attached to the complaint, from which it appeared that plaintiff had "grubbed" 52.071 acres in the fifth division, and 114⅔ acres in the sixth. At intervals of about two weeks, commencing October 1, and ending November 26, 1892, defendant had made payments, five in number, varying in amount from about $400 to about $3,000. It also paid $600 January 7, 1893. Judgment was demanded for the balance of the alleged contract price, with interest.

For a second cause of action, plaintiff alleged that while he was at work in accordance with the conditions of the contract, in the year 1892, and as the work progressed, it became necessary for him and that he did pile up, at different points upon the land, large quantities or heaps of logs and brush; that said logs and brush were green and unseasoned, and could not be burned that year; that no part of the same were burned, nor could they be burned until after the month of May, 1893,—all of which defendant well knew; that between December 28, 1892, and December 14, 1893, defendant wrongfully entered upon the land, and erected over 180 dwelling houses in and among these piles or heaps of logs and brush, so that plaintiff could not de-

stroy the latter by burning, and was afterwards compelled to remove them to places where they could be consumed by fire without endangering and destroying the houses. It was alleged that, in so removing the logs and brush, plaintiff paid out and expended, and such work was reasonably worth, $4,181.37, for which sum judgment was also demanded.

The answer of defendant put plaintiff upon his proof as to the amount of work done; and, at the first opportunity on the trial, defendant's counsel objected to the reception of evidence in behalf of plaintiff, upon the ground that the complaint failed to state facts sufficient to constitute either a first or a second cause of action. The objections, separately made, were sustained, and the case was dismissed. Plaintiff appeals from an order denying a new trial.

As preliminary to a consideration of the action of the lower court in dismissing the case, it is to be observed that the sufficiency of the allegations of the complaint was not challenged by demurrer, but, for the first time, at the trial, when plaintiff's counsel attempted to prove his causes of action. When this is the course pursued, every reasonable intendment is in favor of the sufficiency of the pleading attacked, as it is on a motion for judgment on the pleadings. This rule will be borne in mind as we proceed.

Counsel for respondent, when attempting to sustain the order appealed from, contend that as to the clause in the contract which provides for payment on estimates as the work progresses, on which clause the first cause of action was predicated, a case of patent and incurable ambiguity is presented; that the clause is nugatory, and devoid of legal effect, because no time or times were specified for the making of estimates, or how or by whom they were to be made, and, as a consequence, that no time or times for payment are or can be fixed or determined. It follows, say the counsel, that no enforceable obligation to pay arises until the entire contract is completed; and confessedly this has not been done, the complaint showing that the contract was abandoned by plaintiff before its terms had been fully complied with. If the contract had been silent as to payment, the law would imply that payment was to be made when the work was finished in accordance with its terms, but it was not silent upon this point. The language used rebuts the presumption which would arise from an omission to refer to payment at all; and if, from the

language actually used, the law implies a time or times when estimates were to be made upon which payments were to be based, the clause can be given effect, and the intention of the parties determined. That the law does imply a time or times for making estimates we have no doubt, from the fact that the parties have stipulated that estimates and payments should be made as the work progresses, and there is imported into the clause the condition that such estimates shall be properly and seasonably made, at plaintiff's request. The plaintiff could not unreasonably demand estimates of the work done, but he could require that such estimates be made at proper and reasonable intervals, taking into consideration all the facts and circumstances connected with the work he was engaged in performing; that is, he could properly and reasonably demand estimates. To illustrate, a contractor having a large number of laborers in his employ, who need their money, and who have to be paid often, as we all know, would be justified in demanding estimates with greater regularity and more frequently than a man who is doing all the work with his own hands. Referring to the statement of counsel that it was not specified by whom these estimates were to be made, we can say that it can fairly be inferred that this was defendant's right, for it had to pay the money found thereby to be due. At any rate, the plaintiff conceded this to defendant, and waived in its favor the exercise of this right or privilege.

As we hold that the clause in question is not ambiguous, but must be construed as fixing the time or times for making the estimates upon plaintiff's proper and reasonable demands, as the work progresses, it becomes necessary to inquire whether the complaint alleges that such demand or demands were made. With every reasonable intendment in its favor, we think it does. It avers that on December 14, 1893, and at divers times prior and subsequent to that date, plaintiff duly demanded such estimates and payments of defendant. The allegation that plaintiff duly demanded is equivalent to alleging that he properly and reasonably demanded estimates and payments. If as a matter of fact these estimates were demanded at proper and reasonable periods, and defendant refused to make them or to make payments, it was plaintiff's privilege to refuse to proceed. There was a breach of the contract for which defendant was responsible. The latter refused to make estimates and to pay 85 per cent. of the

contract price as the work progressed, as it had agreed to do. This justified plaintiff's refusal to proceed, his abandonment of the work and an action to recover for that already performed. As against an objection not made until the plaintiff attempted to prove his case, the allegations found in the first cause of action were sufficient.

The second cause of action is based upon plaintiff's claim that, under the contract, he had the absolute right to burn all logs, brush, and other material upon the land, and that until these materials were dried and seasoned, so that they could be burned, the defendant was precluded from doing anything upon or with the premises which would interfere with or affect this right; while counsel for defendant contend that whether the materials should be removed from the land or burned thereon was at the option of its general manager. The language which gives rise to this difference is that where the plaintiff agreed "to cut, grub, and remove or burn all the timber, * * * as directed by the general manager, * * * leaving such trees only as he (the manager) may direct." We cannot agree with either of the counsel as to the proper construction of the phrase. The property was part of a town site, subdivided into lots and blocks, and plaintiff was not given nor could he exercise exclusive possession while performing his contract. He was entitled to such possession as would enable him to do the work without unnecessary interference. But he could not expect that the defendant would wholly abstain from selling lots or from building houses as the work progressed. Nor could the defendant be permitted to unreasonably interfere, directly or indirectly, with plaintiff's manner of doing the work. The former could not arbitrarily and without adequate reason order that all material be removed,—a much more expensive way of doing the work; nor could the latter unreasonably and against a substantial objection, seasonably made by the manager, insist upon destruction by fire. If there existed good and substantial reasons why certain of the material should not be burned, it was within the power of the manager to order that it be removed instead. If, without exercising the right to seasonably direct, the manager permitted the plaintiff to proceed by piling up the materials in a way which clearly and unmistakably indicated an intention to burn the same, he impliedly consented that this might be done; and defendant corporation would be liable if, by subsequent acts of the character al-

leged in the complaint, committed before the material was in proper condition for burning, it prevented destruction by fire, and compelled plaintiff to remove. As we construe the allegations in the second cause of action, this is precisely what was done, although the averments as to when the houses were built, with reference to the time when plaintiff could have burned the piled-up logs and brush, are somewhat obscure. Whether the building of the houses was an interference, and whether they were erected at a time and in such places as to compel plaintiff to remove materials which had theretofore been piled up for burning with the implied consent of defendant's manager, is, of course, a question of fact for the jury. The second count of the complaint stated a good cause of action.

' A new trial must be had. Order reversed.