ALKIRE GROCER COMPANY *et al.*, *Appellants*, v. BALLENGER *et al.*

Division One, February 9, 1897.

1. **Husband and Wife:** SEPARATE ESTATE: STATUTE.  Money of the wife constituting her separate estate is not transferred to the husband by his occupation, use, or care of it; her assent in writing is necessary to vest its ownership in him.  (R. S. 1889, sec. 6869. )

Alkire Grocer Co. v. Ballenger.

2. ——: ——: LAND: EQUITY. Land purchased by the husband with such separate means of the wife is in equity her property although he takes the title in his own name.

3. **Land:** FRAUD: CREDITORS: HUSBAND AND WIFE. The title to land purchased by the husband with the separate means of the wife was taken in his name, the wife being ignorant of such fact. The husband listed the property for taxation and insured it as his own and held himself out to his creditors as the owner. There was nothing to show knowledge on the part of the wife that the husband was using the property to obtain credit. *Held,* that even if the latter's conduct was fraudulent, the evidence was insufficient to connect the wife with it.

*Appeal from Boone Circuit Court.*—HON. JOHN A. HOCKADAY, Judge.

AFFIRMED.

*C. B. Sebastian* for appellants.

(1) The claim of Matilda Ballenger that all the real estate in controversy was purchased with her money is without substantial evidence to support it. (2) The unreasonableness of the contention that she did not know that the title to the property in controversy was in her husband until after he had failed and executed and delivered to her the deed in question on the twenty-eighth day of December, 1893, is clearly shown by the evidence. The record imparts notice, and it does not lie in her mouth to deny knowledge that the title was in her husband. R. S. 1889, sec. 2419; *Fleckenstein v. Baxter,* 114 Mo. 493. Beside, she had the recorded deeds and insurance policies in her hand. (3) The facts of this case bring it within the rule that notice to the agent is notice to the principal. Wade on the Law of Notice, sec. 31; *Mayor v. Old,* 57 Mo. App. 639; *Traver v. Hicks,* 131 Mo. 180. (4) She made her husband her agent with the knowledge that he, of all others, was most interested in violating his trust,

and by so doing enabled him to practice a gross fraud upon these plaintiffs. It is well established law that under this state of facts, the principal is bound by the agent's fraud. Wade on the Law of Notice, secs. 32, 257; Wait on Fraudulent Conveyances, sec. 198; *Warner v. Warner*, 46 N. Y. 228. (5) Where one of two innocent persons must suffer for the wrongful act of another, he must suffer who placed the party doing the wrong in a position to do it. *Neuhoff v. O'Reilly*, 93 Mo. 164.

*Turner, Hinton & Turner* for respondents.

(1) Where fraud is made the basis of an action, plaintiff can recover only on the particular fraud charged. *Mateer v. Railroad*, 105 Mo. 320; *Reed v. Bott*, 100 Mo. 62; *Newham v. Kenton*, 79 Mo. 382; *Smith v. Sims*, 77 Mo. 267. (2) It is unquestionably the law that, where a husband, without having reduced his wife's separate estate to his possession, as provided by the married woman's act, invests such property in land, taking the legal title in his own name, a trust results in favor of the wife. *Broughton v. Brand*, 94 Mo. 169; *Scrutchfield v. Sauter*, 119 Mo. 615; *Seay v. Hesse*, 123 Mo. 450; *DeBancy v. Wheeler*, 128 Mo. 84; *Clowser v. Noland*, 34 S. W. Rep. 64. (3) When a trustee mingles trust funds with his own he does not thereby destroy the relation of trustee and beneficiary and create in its stead the mere relation of debtor and creditor, but if the mingled fund, thus augmented by the beneficiary's money, is invested in lands or other property the beneficiary may still follow it. *Harrison v. Smith*, 83 Mo. 210; *Stoller v. Coates*, 88 Mo. 514. (4) When the husband thus received the wife's money for the express purpose of keeping it and investing it for her, it was his duty to invest it for her in

these several pieces of property which she selected and directed him to purchase; and when he did purchase the property it will be presumed that he did it in the execution of his trust under the familiar maxims that "equity will consider that done which ought to be done" and that "equity imputes an intention to fulfill an obligation." *Wilcocks v. Wilcocks*, 2 Vern. 558; Bispham's Equity [4 Ed.], sec. 46, p. 64; 2 Perry on Trusts [4 Ed.], sec. 841, p. 490. (5) Conduct on the part of a fiduciary as undertaking to act for his beneficiary and then claiming the fruits of his act for himself has never been tolerated by courts of equity. *Northcraft v. Martin*, 28 Mo. 469; *Grumley v. Webb*, 44 Mo. 444; *Valle v. Bryan*, 19 Mo. 423; *Ins. Co. v. Smith*, 117 Mo. 261. (6) In order that the grantee may be affected by the grantor's fraudulent design there must not only be knowledge of the fraud but actual participation therein. *Alberger v. White*, 117 Mo. 347. No matter, therefore, what may have been the purpose of the husband, the wife can not be affected by it unless she participated in it. *Bank v. Winn*, 33 S. W. Rep. 457; *Alberger v. White*, 117 Mo. 347; *Sexton v. Anderson*, 95 Mo. 373. (7) It is an old and established rule that an estoppel *in pais* must be pleaded in order to be available, so that the party sought to be estopped may be prepared to meet and combat such an issue. *Bray v. Marshall*, 75 Mo. 327; *Noble v. Blount*, 77 Mo. 235; *Hammerslough v. Cheatham*, 84 Mo. 13; *Avery v. Railway*, 113 Mo. 561; *Throckmorton v. Pence*, 121 Mo. 50. (8) Even if the issue of estoppel were properly in this case, the facts disclosed by the evidence are not sufficient to support it. In order to constitute an equitable estoppel there must not only have been a misrepresentation or concealment of material facts, but it must have been knowingly made by the one against whom the estoppel is alleged. *Acton v. Dooley*, 74 Mo.

63; *Scrutchfield v. Sauter*, 119 Mo. 615; *DeBerry v. Wheeler*, 128 Mo. 84; Bigelow on Estoppel [2 Ed.], 437; Bispham's Equity [4 Ed.], sec. 288, p. 356.

MACFARLANE, J.—This is an action by plaintiffs, a number of judgment creditors of defendant, E. T. Ballenger, to set aside as fraudulent a deed made by said defendant to his wife, defendant Matilda Ballenger, by which he conveyed to her a number of lots in the town of Columbia. The charge in the petition is that the deed was voluntary and without consideration, and was made and accepted with the intent to hinder, delay and defraud plaintiffs and other creditors of defendant, E. T. Ballenger.

The defendants answered separately. Defendant E. T. Ballenger denies each allegation of the petition, and sets up specially that two of the lots were occupied by himself and family as a homestead and were not subject to sale under the judgments of plaintiffs.

Defendant Matilda Ballenger by her answer denies the fraud, and her participation in any fraudulent intent of her husband, and states specially that she received from the estates of her father and mother the sum of $7,000, which she placed in the hands of her husband, the said E. T. Ballenger, to be invested for her in real estate; that at her request the lots in question had been purchased for her and the said money had been used in paying for and improving it; that without her knowledge or consent the deeds had been taken in the name of her husband; that the deed in question was made to her for the sole purpose of conveying the legal title to the lots of which she was the equitable owner.

A trial of the issues resulted in finding and judgment for defendants, and plaintiffs prosecute this appeal.

The trial established these facts, about which there

is substantially no dispute: Defendants were married some twenty-five years ago, and up to 1890 lived upon a farm which belonged to the husband. On the first of October, 1888, the wife received from her father's estate $3,000; on the thirteenth of December, 1889, $500; on the twenty-sixth of November, 1890, $552; and on the same day $750 from her mother's estate. On May 16, 1889, she received, also, as her share of the proceeds of a partition sale of her father's lands, the sum of $1,871.03. This money was all placed in the hands of her husband for investment. Two thousand dollars of it was invested in bonds, which were paid August 9, 1890. The money as received was deposited in bank to the general credit of the husband and was drawn out by his checks.

The property in question was purchased and paid for on the following dates, August 12, 1890, $2,000; September 9, 1891, $600; May 11, 1892, $210; February 3, 1893, $175, same date, $175. The improvements put upon the property brought the cost up to about $6,000, which appeared to be the fair value of the property at the trial.

Some time in 1890 defendants left the farm and moved to Columbia, and in February, 1891, the husband engaged in the grocery business. To raise the necessary money for this enterprise he says he borrowed $2,000. In 1893 he sold his farm, for which he realized $2,950; which he deposited to his general credit in the bank and used $2,000 of it to repay the borrowed money.

All the property in question was used by the husband as his own. It was assessed in his name, insurance policies were taken out for his benefit, and he collected the rents. During the year 1893 said defendant E. T. Ballenger made several statements to mercantile agencies of his financial condition, in which he

included this property.    The judgments of plaintiff were on account of goods which went into the grocery business and the evidence tended to prove that credit was given in reliance on these statements.

The deed in question was dated December 28, 1893, and expressed a consideration of $3,100.    On December 29, 1893, E. T. Ballenger assigned his entire stock of groceries, furniture and fixtures, together with all notes and accounts, for the benefit of his creditors.    Thereafter plaintiffs recovered their judgments on account of goods previously purchased.    It is estimated that not exceeding $600 will be realized on the assigned goods and accounts.

Mrs. Ballenger testified that all the purchases of real estate and the improvements thereon were made at her request; that the deeds were delivered to her, but she did not know they had been taken in the name of the husband until he made the deed to her.    It was shown that she was illiterate, barely able to read and write, and had no business experience or knowledge.

I.    The money which came to Mrs. Ballenger from the estates of her father and mother, together with all income, increase and profits, was her separate property, free from the claims of her husband and his creditors.    She did not transfer it to her husband by his use, occupancy, care, or protection thereof, but the same remained her separate property unless by the terms of her assent, in writing, full authority was given him.    While in the possession, use, and control of her husband, it was a trust fund, and the property into which it was invested became trust property, for her sole use and benefit, if she so elected.    This would be so whether she directed the purchases, or whether the title was taken by the husband in his own name.    R. S. 1889, sec. 6869; *Seay v. Hesse*, 123 Mo. 456.

But in this case the evidence satisfies us that the

purchases were made and the money invested under the direction of the wife. She intended that the property should be her own, and in equity it was her property, though the husband took the title thereto in his own name. The deed to his wife was a mere execution of the trust.

But as between the husband and wife, the trustee and beneficiary, there is no question in this case. Neither deny the trust, which has been executed to the satisfaction of both.

II. The question and the sole question in the case is whether the conveyance by the husband to the wife, in execution of the trust, was fraudulent as to the creditors of the former, and whether the wife participated therein.

Participation in the fraud by the wife is supposed to be found in the fact that she permitted the property to stand in the name of her husband, thereby giving him a fictitious and deceptive credit, upon which plaintiffs relied.

The record is barren of any evidence tending to prove that Mrs. Ballenger had any knowledge that her husband was doing business on credit, or that, in order to secure credit, he represented himself as being the owner of this property. Indeed, she had every reason to believe that his own means was ample to carry on the small business he was conducting. He only had about $2,000 invested in goods, and he had sold his own farm for $2,950, but a short time before. Even though she knew the legal title was vested in her husband, she did not know that injury or wrong would be caused to others thereby.

Though the acts of the husband may have been fraudulent, the evidence does not connect the wife with it as a participant. The judgment is affirmed. All the judges of this division concur, except ROBINSON. J., who is absent.