BESSIE MANN, APPELLANT, V. FARMERS EXCHANGE BANK OF GALLATIN; S. L. CANTLEY, COMMISSIONER, ET AL., RESPONDENTS.—50 S. W. (2d) 146.

Kansas City Court of Appeals. May 23, 1932.

Reversed and remanded (*with directions*).

*Dean H. Leopard* for appellant.

*Ed. C. Hyde* and *Earle W. Frost* for respondents.

ARNOLD, J.—Plaintiff appeals from a judgment of the circuit court denying her claim as preferred, in an action against defendants, but allowing it as a common claim.

The suit was instituted in the circuit court of Daviess county, Missouri, on February 7, 1927, by petition which alleges the Farmers Exchange Bank of Gallatin, Missouri, was a corporation organized and existing under the laws of Missouri, and engaged in banking business; that on March 4, 1926, said bank, by its board of directors, was placed in the hands of C. E. French, Commissioner of Finance of Missouri, together with its property, business and affairs, for liquidation, and said finance commissioner took charge thereof; that afterwards said C. E. French resigned his said office of Commissioner of Finance and defendant S. L. Cantley was appointed his successor and, at the time of the filing of this suit, was acting as such commissioner and had charge of defendant bank, through Joseph M. Martin, special deputy.

The petition alleges that prior to March 4, 1926, the time defendant bank was taken in charge by the commissioner of finance and placed in the hands of special deputy, Joseph N. Martin, the plaintiff, Bessie Mann, deposited and left in said bank two United States Government bonds, for the sum of $1,000, of the second Liberty Loan issue, bearing interest at four and one-half per cent per annum, payable semiannually, which deposit and leaving of said bonds was at the special request of said bank, with its officers and agents in charge thereof; that said bank, by such officers and agents, promised and agreed to keep the same safely for plaintiff and to deliver them to her on her request; that, relying on said promise, plaintiff left them with said bank. That said bank and all its property, effects and affairs, on March 4, 1926, were taken in charge by the commissioner of finance and placed in the hands of such special deputy; that plaintiff has demanded of said bank and the officers in charge thereof, the return of her said bonds; that such officers have failed and refused to return said bonds or to account therefor; that plaintiff has good reason to believe and hence states that said bonds have been converted to the use and benefit of said bank, and by reason of gross carelessness and mismanagement of said bank, said bonds have been lost or stolen by

said bank, or its officers in charge thereof; that said bank by its officers has wrongfully converted said bonds into money at the par value thereof, and has placed the proceeds of the sale of such bonds in the assets of said bank, so that, at the time the bank was placed in the hands of the commissioner of finance, as aforesaid, and had, in its assets so turned over to the commissioner, the proceeds of the sale of said bonds, and that the special deputy in charge now holds and has in his charge all of such money and proceeds received from such sale, together with other assets of said bank.

The petition further states:

"Claimant further states that she has filed her claim on account of said bonds with the special deputy commissioner of finance in charge of said bank, within the time required by law.

"Plaintiff further states that the claim upon which this action is instituted was duly filed, and that sixty days have elapsed since the expiration of time for filing said claim and that said claim has not been approved."

The prayer asks that plaintiff be allowed her claim for payment of said bonds with accrued, unpaid interest, as a preferential claim.

The petition was filed on February 7, 1927. Thereafter, and on July 11, 1928, the court took up for consideration the report of the Commissioner of Finance in the matter of the liquidation of the Farmers Exchange Bank of Gallatin, and considered "all claims made for preference and for preferential payment," as shown by said report, "and all claims made by all parties who have filed claims for preference, and of all parties who have filed suits for preference, and for preferential payment, and all claims of all parties who have filed common claims, and all of said claims, suits and actions are now considered by the court, and are allowed, approved, disapproved or allowed conditionally, in detail, as set forth," in a general decree, and final judgment was rendered thereon. The final decree recites that evidence was heard on such claims, separately and severally; the decree approved the report of the special deputy from pages one to fourteen, inclusive, and as to the claim of Mrs. Bessie Mann, plaintiff herein, the decree recites:

"And now comes Mrs. Bessie Mann, after said rejection, and after due notice of said rejection having been given to her, and files suit for a bond left with said bank for safekeeping, in the amount of one thousand ($1,000) dollars, asking that the same be allowed as a claim against said bank and entitled to preference.

"This cause is submitted to the court, evidence heard, and the court, after being fully advised in the matter, finds from the evidence that Mrs. Bessie Mann left with the Farmers Exchange Bank of Gallatin, Missouri, a bond in the sum of one thousand ($1,000) dollars, and

that the court finds from the evidence that said claimant is not entitled to preference or to a preferential allowance, and finds that the evidence fails to show that said bond or the proceeds thereof ever went into the assets of said bank or into the hands of the Commissioner of Finance in charge of said bank but that same should be allowed as a common claim.

"It is therefore ordered, adjudged and decreed by the court, that the claim of Mrs. Bessie Mann for preference and for preferential allowance be and the same is hereby denied, but that said claim be and the same is hereby allowed as a common claim, to be paid out of the assets of said bank, after all preferential claims and allowances have been paid."

Motions for a new trial and in arrest of judgment were overruled and plaintiff has appealed.

The record discloses the following occurred at the beginning of the trial:

"Mr. Cruzen reads claimant's petition to the court.

"Mr. ALEXANDER: We would like for the record to show that the deputy commissioner of finance, Mr. Martin, files a demurrer to the petition in this case, and it is in substance that the petition does not state facts upon which the plaintiff is entitled to the relief called for, and then let it be overruled, and then we have leave to file and do file an answer which will be a general denial.

THE COURT: You will file that separate pleading?

"Mr. ALEXANDER: Yes; first, let the record show we file a demurrer to the petition, which the court takes up and considers and overrules, and of course, I understand exceptions are saved, and followed by an entry that the deputy commissioner of finance files an answer in the case, which is in the nature of a general denial.

"THE COURT: Make the entry—demurrer filed, and overruled, and defendant files answer."

It was admitted and agreed by counsel in open court, in part, as follows:

". . . that the claim of Bessie Mann against said bank for preference in the sum of one thousand ($1,000) dollars, was duly filed within the time required by law, that sixty days has elapsed since the expiration of the time for filing claims against said bank and that said claim has not been approved and that the claim for preference was duly filed within the time required by law, and that sixty days has elapsed since the expiration of the time for filing claim for preference and that said claim for preference has not been approved."

Defendants' answer was a general denial. The first question for our consideration is defendant's demurrer to the petition. This

question was not raised in defendants' original brief, but is presented and discussed in respondent's supplemental brief and argument, filed subsequent to the oral argument before this court. It is urged, in this connection, that the petition is insufficient and does not state a cause of action, in that it does not state and allege all of the necessary legal requirements in a suit against an insolvent bank and the commissioner of finance engaged in its liquidation. This position has special reference to section 5337, Revised Statutes 1929, which, in part, is as follows:

"When the time within which the commissioner is required to approve or reject claims has expired and at any time within six months thereafter, a claimant whose claim has been duly filed and has not been approved by the commissioner may institute and maintain an action thereon against such corporation or banker. No action shall be maintained against such corporation or banker while the commissioner is in possession of its affairs and business unless brought within the period of limitation specified in this section. In all actions or proceedings instituted against such corporation or banker while the commissioner is in possession of its property and business, the plaintiff shall be required 'to allege and prove that the claim upon which the action is instituted was duly filed and that sixty days have elapsed since the expiration of time for filing said claims and that said claim has not been approved." [R. S. 1919, sec. 11720.]

It is pointed out the petition herein contains only the general allegation that "the claim upon which this action is instituted was duly filed and that sixty days have elapsed since the expiration of time for filing said claim," that it does not allege when the claim should have been filed, but merely makes the allegation that the claim was "duly filed;" that, by the requirement "duly filed" the statute means plaintiff must allege the time when the claim should have been filed and that·it was filed within that time. [Citing the case In re State Bank of Brashear, 45 S. W. (2d) 117 (advance sheets).] An examination of the opinion in that case shows the petition alleges:

"After the said commissioner took charge of said bank and its assets, the said commissioner gave due notice to the several creditors to file, present and prove their several claims against said bank, and thereafter, to-wit, on January 17, 1931, and within the time specified in said notice, plaintiff filed, presented and made proof of his said claim herein in the sum of $500 and said commissioner allowed the said claim of plaintiff against said bank in said sum of $500 as a common claim and plaintiff now files this petition asking the said court to allow his said claim as a preferred one for said sum."

6

While the allegation in that case is not identical with the one here complained of, the two possess the same vice, if it is a vice. In that case, the court said:

"While there is an allegation that the claim was filed on January 17, 1931, there is no allegation of the date when the time for filing claims expired; nor is there any allegation that sixty days have elapsed since the expiration of that time."

The case of Federal Land Bank v. Cantley, 44 S. W. (2d) 269, 270, would seem to support defendant's position, as follows:

"It is alleged in the petition that on August 27, 1930, the assets of the bank were placed in the hands of the commissioner for liquidation; that the commissioner gave notice to present all claims against the bank on or before January 29, 1931; that the claim referred to in the petition was duly presented and allowed by the commissioner as a general claim.

"There was no evidence that the claim upon which the action is based was filed with the commissioner before the institution of this action."

In that case we held "it was essential for plaintiff to allege and prove that the claim asserted had been filed with the commissioner, and that sixty days had elapsed since the expiration of time for filing claims and that said claim had not been approved. There is no evidence that the claim was filed with the commissioner;" that the statute (sec. 5337) is mandatory and must be strictly complied with. In the case at bar, the petition states plaintiff filed her claim with the special commissioner "within the time required by law" and that "the claim upon which this action is instituted was duly filed, and that sixty days have elapsed since the expiration of time for filing said claim and that said claim has not been approved." Thus it is seen, in the light of the cited cases, that the allegation does not name a specific time when the claim should have been filed; and this omission is likewise present in the allegation that sixty days had expired since the time of filing. However, the allegation that "said claim has not been approved" would seem to be sufficient in that respect. It was held in Cold Springs Lodge v. Cantley, 18 S. W. (2d) 111, the allegation there in question, merely pleads a conclusion without giving specific dates.

In opposition to this view, plaintiff directs attention to that part of the agreed statement of facts wherein it is said the claim herein "was duly filed within the time required by law, and that sixty days had elapsed since the expiration of the time for filing claims, and that said claim was not approved, and that the claim for preference was duly filed within the time required by law, and sixty days have elapsed since the expiration of the time for filing claim for preference

and that said claim for preference has not been approved. As shown by the record, another and similar admission was made during recross examination of witness E. D. Mann, plaintiff's husband, as follows:

"MR. CRUZEN: It will be admitted that Bessie Mann within the time required by law presented a claim for that.

"MR. GILLIHAN: I think the record shows that.

"MR. CRUZEN: And that it has been rejected, and suit was brought within the six months thereafter.

"MR. ALEXANDER: We admit all the formal allegations."

Plaintiff claims the defect complained of in the petition was cured by these admissions, and we think this position sound, especally, insofar as proof required is concerned, but a more serious question arises when we come to consider whether the admissions cure the alleged defect in the petition. It is noted there was no motion by defendant to make the petition more definite and certain, and the demurrer was offered prior to the filing of the answer and therefore in time, and the questions presented thereby may be raised at any time in this court. The point was not brought out in defendant's original brief, but was properly raised in its supplemental brief and argument and is, therefore, before us for determination.

Plaintiff presents her argument in opposition under three headings. First, it is insisted the petition follows the exact language of the statute. It must be noticed the statute is mandatory in respect to pleading and proof that the claim was filed within the proper time. Under point 2, plaintiff urges that, as the court found in her favor to the extent of allowing her demand as a common claim, it is necessarily implied that the facts required by section 5337 were properly pleaded and proved, and the express recitals of the judgment show substantial compliance with the statute; that the principles of aider by judgment apply. It is further argued by plaintiff in this connection that the point now raised was not raised in the trial court; that while no written demurrer was ever filed, the bill of exceptions shows defendants had the record show they filed a demurrer specifying no objections to the petition other than the general allegation that it fails to state a cause of action, and at the same time requested the court to overrule it. This was followed by the stipulations above referred to, showing counsel intended to waive all questions except those entering into the merits of the transactions complained of, and the oral demurrer was not intended to raise or preserve the question now presented; that the only objection to the petition which could have any shadow of foundation is that it stated conclusions and not facts; that this objection, if ever tenable, is not available after judgment. In support of her position, plaintiff cites

a number of cases holding generally that where facts which defendants insist should have been alleged in the petition were proved without objection, and stood unchallenged at the trial, no demurrer being offered or objection made, an appellate court will not treat the petition as void, even if it defectively states a cause of action; but as the plaintiff would have been entitled to amend her petition at the trial to correspond to the facts proved, the court will treat it as having been properly amended to embrace such facts. [Ehrlich v. Mittelberg, 299 Mo. 284, 252 S. W. 671; Rudd v. Rudd (Mo. App.), 13 S. W. (2d) 1082; Krebs v. Krebs, 24 S. W. (2d) 171; Slaughter v. Slaughter, 106 Mo. App. 104, 80 S. W. 3; Dyrcz v. Packing Co. (Mo. App.), 194 S. W. 761; Baugher v. Const. Co., 26 S. W. (2d) 946; Kemper v. Gluck, 39 S. W. (2d) 330.] It is also insisted that the demurrer herein was, at best, in the nature of a demurrer *ore tenus*, which is held not to attack allegations of legal conclusions. [Doyle v. Cleaning Co. (Mo. App.), 31 S. W. (2d) 242; State ex inf. Major v. Lumber Co., 260 Mo. 282, 169 S. W. 145.] An examination of these authorities shows beyond question that they reflect the general rules of pleading and practice in this respect in this state, and the case here in issue is one where these general rules apply.

The authorities are somewhat in conflict on the point now under discussion. The great weight of authority, however, is to the effect that a pleading which alleges a thing was "duly done" does not plead a conclusion, but a matter of fact. It was held in Hatheway v. Reed et al., 127 Mass. 136, as to an allegation similar to the one here in question, that it was a pleading of a matter of fact and not of law, and the allegation was held sufficient. Cases holding to the same effect are: Webb v. Bidwell, 15 Minn. 479; Breckenridge County v. McCracken, 61 Fed. 191; D. & R. G. R. R. Co. v. City, 67 Colo. 288; Newton v. Improvement Co., 62 Minn. 436; Manley v. Rassiga et al., 13 Hun. 288; Stephens v. City, 11 Wash. 41; Miles v. Life Association, 108 Wis. 421; State ex rel. v. County Court, 46 Oregon, 519; People v. Ryder, 12 N. Y. 433. In view of the general ruling in the cases just cited that an allegation, to the effect that a thing was "duly done," pleads a fact and not a conclusion, and in view of the stipulation above referred to, we rule this point against defendant; and, because of the dissimilarity in facts, we hold this ruling not to be in conflict with the case of Federal Land Bank v. Cantley, 44 S. W. (2d) 269, and In re State Bank of Brashear (Mo. App.), 45 S. W. 117.

We now pass to a consideration of the case on its merits. There are but two assignments of error (1) that the court erred in refusing to allow the claim of plaintiff as a preferred claim and (2) that, under the law, plaintiff was entitled to have a trust impressed against

the assets of the bank, and the court erred in failing so to find and adjudge. The two assignments are so closely allied, and, in fact are charges of the same error, that they may properly be considered together.

A consideration of the cause on its merits demands some reference to the proof offered. The evidence presented consists chiefly of documents, the only witnesses introduced and examined being E. D. Mann, claimant's husband, and Joseph N. Martin, special deputy finance commissioner in charge of the defunct bank. E. D. Mann testified that about June or July, 1920, he deposited with the Farmers Exchange Bank, United States Government bonds of the second Liberty Loan, in the amount of $3,000, of which $2,000 belonged to him and two $500 bonds belonged to his wife, claimant herein; that she had nothing to do with the transaction and had no knowledge of it and that all the acts done in connection therewith were done by the witness; that, from the time the bonds were deposited, the interest was collected by said bank and paid to Mr. Mann and Mrs. Mann on the bonds owned by each respectively; that, at the time the bonds were placed in the bank by E. D. Mann, he and Homer Feurt, president, had some conversation relative to the bank's use of them as collateral for borrowed money; that no receipt for the bonds was given at that time, but witness was given notes signed by various customers of the bank to be held by him as collateral for the return of the bonds; that, from time to time, these notes were changed and renewed in a total amount of about $4,000.

On about August 17, 1922, E. D. Mann, wishing to change the arrangement by which the bank might claim the right to use the bonds as collateral, ordered his bonds sold; that the bank, ostensibly, sold his bonds and credited him with $2043, as the supposed proceeds thereof. Instead of selling Mrs. Mann's bonds, it was agreed between E. D. Mann and R. V. Thompson, the cashier, that they should be retained and held by the bank for safe keeping, and, pursuant to this agreement, the bank issued a receipt for the bonds, wherein it was stated they were held for safe keeping, at which time E. D. Mann surrendered the collateral held by him. The receipt of August 17, 1922, was not in evidence, it being explained by E. D. Mann that, as the interest was collected on the bonds, it was credited on the back of the receipt and placed to claimant's credit on the books of the bank, until there was no space on the receipt for further credit entries.

The witness testified that the matter continued in this situation until February 9, 1925, at which time E. D. Mann went to the bank for the purpose of getting claimant's bonds, but was dissuaded from

doing so, and instead of getting the bonds, he accepted a new receipt, as follows:

"Deposited in Farmers Exchange Bank,

"By Mrs. Bessie Mann, Gallatin, Mo. Feb. 9, 1925.

"2nd Liberty Loan Bond for safe keeping    Dollars
    "1000

    "R. V. Thompson,
      "Cas."

Thereafter the bank paid claimant the interest falling due in May and November. The deposit slip relative to that transaction is evidenced by the slip introduced in evidence, and is as follows:

"Deposited in Farmers Exchange Bank,

"By Mrs. Bessie Mann, May 28, 1921,    Dollars    cents.
    "42    50

"Int. on Bonds for Nov. & May, 1921.

    "R. V. Thompson,
      "Cas."

Witness Mann stated he left these bonds for safe keeping, as per the receipt, along with some bonds he had prior to that time; that he attended to the banking business for his wife who had nothing to do with it; that he received the interest on the bonds from the time he left them to the fall before the bank closed the following March; that the last interest was paid in November, 1925; that Dr. Thompson (cashier) always paid the interest to the witness and credited same on Mrs. Mann's bank book; that the numbers of these two $500 bonds were "D00314409" and "E00314410." Mr. Mann testified he made a search for those bonds after the bank closed and found nothing for a long time, but later, he heard there was a note in the bank with his name on it; that he did not think he had ever seen it before, until the day of the trial. The bank closed March 4, 1926, as already stated, and thereafter claimant demanded her bonds, but they were not forthcoming.

Joseph N. Martin, special deputy finance commissioner, in charge of the bank, the only other witness testifying at the trial, stated there was an account on the records in the name of "J. Thompson;" that he did not know J. Thompson and was informed there was no such party; that Virgil Chrane, assistant cashier, and others told him it was what they called a "clearing account;" that they deposited there one per cent of what they received on notes they "brokered out" on the side to individuals, and in a good many instances, they found entries where they paid interest on bonds which seemed to be missing out of the "J. Thompson" account; that Mr. Chrane told him they laughed about this account a good deal and said it represented transactions in and out, of Feurt and Thompson,

in connection with the bank, in a way; that he found other instances where interest on bonds deposited there and on notes had been paid out of this account.

Besides the testimony of the two witnesses just mentioned, the evidence consisted of the written report of the finance commissioner, the books and accounts of the bank, all of which were introduced in evidence and considered by the trial court. These records and the testimony tend to show that the bonds here in issue had been disposed of prior to the time the bank issued its receipt for safe keeping, in 1925. The records of the bank disclose there was a shifting of bonds and notes; notes being taken out of the note register and bonds substituted therefor. This shifting is shown to have been done in the case of claimant's two bonds here in issue. The record shows that on October 29, 1920, these bonds, with others, were forwarded to the Fidelity National Bank of Kansas City, Missouri, in the total amount of $20,100, and the Farmers Exchange Bank had a balance in the Fidelity Bank of $97,133.21, against a balance of $49,451.43, on the previous day. The records further show that offsetting the money received for the bonds thus sold, certain notes listed on the note register were charged out. In this manner it is shown that claimant's bonds were sold by the bank, and the bank received the proceeds therefrom.

It is claimant's position that at all times the defunct bank handled the matter in all respects as if it actually held these bonds, so that the claimant and her husband believed the bonds actually were in the bank for safe keeping. This position is supported by the issuance of the two receipts in 1922 and 1925, reciting such fact. Thus, it should have been held by the trial court that the evidence shows the bonds left for safe keeping were sold without authority and the proceeds went into the Farmers Exchange Bank, and from them into the hands of the finance commissioner.

Claimant urges the deposit of the bonds for safe keeping constituted a special deposit and that claimant is entitled to a preference thereon. This position is supported by the cases of Seify v. Bank, 44 S. W. (2d) 205, and In re Linn County Bank, 1 S. W. (2d) 207. Defendant cites the case of Gaty v. French (Mo. App.), 3 S. W. (2d) 1042, in support of the contention that when plaintiff agreed the bonds should be used as collateral, she assumed the risk of the bank being unable to return them to her on demand. That is good law, but it does not fit the facts herein. The testimony in claimant's behalf shows her bonds were not to be used as collateral, but were deposited for safe keeping only. Further, it is defendants' position that even if the bank sold claimant's bonds in 1920, without authority, and spent the money so that the pro-

ceeds of the sale were dissipated and gone, the receipts of 1922 and 1925, for something that had been gone for a period of two to five years, did not in any way augment or increase the assets of the bank; that there was no fund created by virtue of such receipts which could be traced into the hands of the commissioner, and no augmentation of the bank's assets.

This position must be held unsound, and an analysis of the cases cited in support thereof is unnecessary. The testimony amply supports claimant in her position that the bonds in question were left for safe keeping in 1920, and were sold without authority, the proceeds going into the assets of the bank and so remaining without change or modification of any kind up to the time the bank passed into the hands of the finance commissioner. The burden of proof was on claimant to show this, and we rule she sustained that burden.

Defendants insist claimant had full power and authority to give her property to her husband by verbal gift, and that the evidence would fully warrant the conclusion that she did so. We think not. Neither does the evidence show that Mr. Mann was claimant's agent for any purpose in respect to the bonds except to deposit them for safe keeping. Section 3003, Revised Statutes 1929, would seem to determine this matter against defendants' contention, as follows:

"Provided, that said personal property shall not be deemed to have been reduced to possession by the husband by his use, occupancy, care or protection thereof, but the same shall remain her separate property, unless by the terms of said assent in writing, full authority shall have been given by the wife to the husband to sell, encumber or otherwise dispose of the same for his own use and benefit, . . ." [Alkire Groc. Co. v. Ballenger, 137 Mo. 369, 38 S. W. 911; State ex rel. Smith v. Jones, 83 Mo. App. 151.] It has been held that a wife may verbally authorize her husband as her agent, to sell her personal property, but proof of such agency should be clear. [Long v. Martin, 152 Mo. 668, 54 S. W. 473; Stone v. Bank, 81 Mo. App. 9.] But this rule does not apply in the case at bar because there is no showing that claimant authorized her husband to dispose of her bonds, either in writing or verbally, other than to deposit them for safe keeping. Under the facts shown by the evidence, we rule that a trust relationship arose in 1920, when the bonds were sold by defendant and the funds of the bank were thereby augmented; that this relationship remained unchanged, and the funds passed into the hands of the commissioner of finance.

The judgment is reversed and the cause remanded with directions to allow plaintiff's claim as preferred. It is so ordered. All concur.