BESSIE PHARES *v.* SMITH HOOD, *Receiver,*

(No. 8460)

J. S. PUFFENBARGER *v.* SMITH HOOD, *Receiver,*

(No. 8461)

JOE E. HEVENER *v.* SMITH HOOD, *Receiver,*

(No. 8462)

DOVIE BOWERS *v.* SMITH HOOD, *Receiver,*

(No. 8463)

Submitted January 26, 1937. Decided February 2, 1937.

*R. M. Hiner,* for appellant.

*McCauley, Zimmerman & McCauley,* for appellees Phares, Hevener and Bowers.

*E. L. Judy* and *William McCoy,* for appellee Puffenbarger.

HATCHER, JUDGE:

These cases involve the responsibility of a bank for a number of U. S. Government bonds left for safe-keeping by depositors with Irving Ritchie, its cashier. The bank became insolvent, was closed December 31, 1931, and was placed in charge of a representative of the banking commissioner's office, as receiver. The bond owners requested him to return the bonds; he replied simply that he did not have them. No trace of them appears in the evidence except of two, which were shown to have been negotiated by the bank. A preferred claim was awarded the owner of those two. Recoveries as common creditors were awarded the several owners of the other bonds.

The main contentions of the receiver are (1) that the bank was not authorized to receive the bonds for safe-keeping; (2) that, if so, the cashier was unauthorized to accept them on behalf of the bank and acted personally in doing so; and (3) that if the bank became a lawful bailee of the bonds, it did so gratuitously and owed the bond owners but slight care.

1. By Acts 1929, Chapter 23, Section 3, banks were given the specific right "to receive on deposit for safekeeping, jewelry, plate, stocks, bonds and personal property of whatsoever description." Two of the deposits herein were made subsequent to 1929. Prior thereto, the statute merely stated in this respect that banks could exercise "all such incidental powers as may be necessary to carry on the business of banking, by * * * receiving deposits * * *." Whether this provision of itself was broad enough to authorize the transactions herein prior to 1929, need not be considered seriously. Deposits of personal property in banks for safe-keeping have been incidents of banking from the beginnings of our present banking system. The earliest bankers of England were

goldsmiths. *Zollman, Banks and Banking*, sec. 61. "The goldsmiths of London * * * took the money, bullion, plate, etc. of depositors, merely for safe-keeping." Angel & Ames, Corporations, (11th Ed.) sec. 55, note 2. Accord: *Pattison* v. *Bank*, 80 N. Y. 82, 94-5, 36 Am. Rep. 582. "Originally the business of banking consisted only in receiving deposits * * * for safe-keeping." *Oulton* v. *Savings Inst.*, 17 Wall. (U. S.) 109, 118, 21 L. Ed. 618. While in modern times general deposits constitute the principal business of banks, the power of a bank to still receive a deposit for the special purpose of safe-keeping is commonly conceded, "as an incident to the general function of the institution." Morse, Banks and Banking, (6th Ed.) sec. 191. Accord: *Zollman, supra*, sec. 3062; *Hill* v. *Bank*, 95 W. Va. 649, 655, 123 S. E. 417, 419. Furthermore, a bank cannot justify withholding a deposit upon the mere ground that its acquisition was *ultra vires. First Nat. Bank* v. *Graham*, 100 U. S. 699, 25 L. Ed. 750; *Chafin* v. *Coal Co.*, 85 W. Va. 459, 463, 102 S. E. 291, 11 A. L. R. 657.

2. Since the acceptance of bonds for safe-keeping is "every day business for bankers" (*Zollman*) it would naturally follow that the cashier, as the chief executive officer of a bank, would have the power to receive such special deposits for the bank without express authorization from the board of directors. *First Nat. Bank of Silverton* v. *Bank*, 273 Fed. 119. And the authorities generally agree that whenever a board of directors permits a cashier to exercise such authority openly for a considerable time, the bank is bound by his acts. *Foster* v. *Bank* (a leading case), 17 Mass. 479, 497-8, 9 Am. Dec. 168; *First Nat. Bank* v. *Graham*, 79 Pa. 106, 21 Am. Rep. 49; *Sherwood* v. *Bank*, 131 Iowa, 528, 534, 109 N. W. 9; Dobie, Bailments, 56; Morse, *supra*, pp. 518-19. No express authority was given the cashier herein by the board of directors to receive special deposits. However, a bookkeeper of the bank testified without contradiction that from 1920 until it closed, bonds were left with the bank for safe-keeping "every few days". The only director whose testimony is before us admitted that he

knew "as a private individual" of the custom of the people of his county for a number of years to leave Liberty Bonds and other valuable papers with the bank for safe-keeping; that about 1926, a letter from the state banking commissioner was read at a meeting of the board of directors, in which he suggested that the bank get a book in which to keep a record of property received for safe-keeping; that in February, 1927, another letter from the commissioner was read to the board of directors and made part of the minutes of a meeting, in which he said "I note from the report that you have installed a safe-keeping record, * * * and believe it will prove a protection to your bank." This evidence is sufficient to show that the board of directors knew and acquiesced in the practice of its cashier to receive bonds for safe-keeping.

The cashier bought the bonds for some of the parties in these suits; he may have credited in some instances the checking accounts of certain bond owners with more interest than the bonds were paying; and he did not list any of the bonds in question on the bank's records. Wherefore, the receiver contends that the cashier's dealings with the instant bond owners were personal. The cashier himself did not testify; and the receiver's failure to have him do so weighs heavily against the contention. Why depend on inference alone if affirmative evidence supporting the contention was available? The bond owners were general depositors of the bank. The transactions relating to the bonds transpired at the bank. The evidence shows that the bond owners thought they were dealing with the bank, through the cashier. They were given written receipts by him which specifically described the bonds in question, stated that the bonds were to be held for safe-keeping and were severally signed either in the name of the bank by Ritchie, cashier, or in the name of Ritchie, cashier. It is untenable that such dealings between the bank's patrons and its cashier became personal merely because he did not officially record or explain the dealings. His acts, under the circumstances, were the acts of the bank. 4 Michie, Banks and Banking, Chapter 8, Section 8b.

3. No direct compensation for care of the bonds was paid to the bank. In such cases, the courts are divided as to whether a bank's services are gratuitous or not. Zollman, *supra*, sec. 3067. This court took the view in *Hill* v. *Bank, supra*, that the acceptance of special deposits by a bank was "promotive of its general business," and therefore not gratuitous. Let the opposite view be conceded for the moment, under which the bank would be liable to the bond owners only for fraud or gross negligence. *Coal Co.* v. *Richter*, 31 W. Va. 858, 861, 8 S. E. 609. There is ample authority for holding that where a bank has received bonds for safe-keeping, its refusal to return them upon demand, without explanation, as in these suits, save that the bonds were not in its possession, is "sufficient evidence that the bonds had been lost by the gross negligence of the bank, if not converted to its own use." *First Nat. Bank* v. *Zent*, 39 Ohio St. 105, 109. Accord: *First Nat. Bank* v. *Graham, supra; Manhattan Bank* v. *Walker*, 130 U. S. 267, 277, 9 S. Ct. 519, 32 L. Ed. 959; *Isham* v. *Post*, 141 N. Y. 100, 35 N. E. 1084, 23 L. R. A. 90, 38 A. S. R. 766, 768-9; *First Nat. Bank* v. *Tevis*, 29 Okla. 714, 719, 119 P. 218; Annotation 38 Am. St. R. 783.

After the court announced an award of preference to the bond owner whose bonds the bank had converted, and before the decree thereon was entered, the bond owner was permitted to take further evidence proving more definitely the bank's negotiation of one of the bonds. The receiver complains of this. Expression of the judicial opinion was not an adjudication of the cause. The matter was still in the breast of the court. *Armstrong* v. *Ross*, 56 W. Va. 16, 17-18, 48 S. E. 745. Being so, the consideration of further evidence was discretional with the court, and we see no abuse here of the discretion. Upon converting the two bonds to its own use, the bank became a trustee therefor to their owner, and the preference awarded this owner was proper. *Carleton Mining & Power Co.* v. *Rr. Co.*, 113 W. Va. 20, 24, 166 S. E. 536. The bond owners allege cross-error because not given preferred claims for the other bonds. Their position, how-

ever, is not supported even by their own citations, which apply only where the proceeds of special deposits have augmented the bank's assets. *Mann* v. *Bank*, 227 Mo. App. 1, 50 S. W. (2d) 146, 152. Except as to the two bonds, such augmentation here is not shown.

These suits were separate, and the decrees therein were also separate. Each decree for a common recovery awarded interest on the par value of the bonds from the date of the last interest payment made to the bond owner to the date of the decree (about four and one-half years). The bond owners would sustain this allowance of interest under Code, 56-6-29, which provides that a decree for the payment of money shall be for the aggregate of principal and interest due when the decree is rendered. Before that statute can apply, it must first be determined if interest was due at the dates of the several decrees. The receiver says interest does not run on common claims against the receiver of an insolvent and that the allowance of interest in these suits "makes the plaintiffs preferred creditors in this respect", i.e., preferred over other common creditors whom his brief charges were not awarded like interest. "As a general rule", says the Supreme Court of the United States, "after property of an insolvent passes into the hands of a receiver * * * interest is not allowed on the claims against the funds. The delay in distribution is the act of the law; it is a necessary incident to the settlement of the estate." *Thomas* v. *Car Co.*, 149 U. S. 95, 116-17, 13 S. Ct. 824, 833, 37 L. Ed. 663. The rule was evolved mainly as a matter of convenience, and is by no means inflexible. It is applied or not, according to its effect on the equitable distribution of the receiver's funds. Clark on Receivers (2d Ed.) sec. 660 (a). The records of the instant suits do not disclose what was done about interest on other common claims against the receiver. Therefore, in furtherance of equity, we set aside the awards of interest herein to the common claimants, and remand the causes so that full information may be furnished the court on the awards of interest made or denied the other common claimants. If interest has been awarded the

others, the plaintiffs should have their interest; if interest has been refused the others, the plaintiffs should be treated likewise; and thus all common claimants will fare alike. In every other respect the several decrees are affirmed, with costs to the plaintiffs.

*Affirmed in part; reversed in part and remanded.*